## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

**ALLISON BISHOP**          :          **CV: NO:3:01CV1140 (AVC)**
As executor of the Estate   :
Of Thelma Bishop,           :
    *Plaintiff,*          :
**v.**          :
          :
**STATE OF CONNECTICUT**     :
**CT VALLEY WHITING**        :
**HOSPITAL, ET AL..**        :          **OCTOBER 27, 2003**
    *Defendants.*          :

### PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

COMES NOW the plaintiff pursuant to Rule 56 of the Federal Rules of Civil Procedure

to oppose the defendants' motion for summary judgment. There are issues of material

fact in dispute and the plaintiff is able to sustain her burden of proof against the

defendants.

THE PLAINTIFF

BY: _____
    DAWNE WESTBROOK
    Federal Bar No. ct21987
    PO BOX 2502
    Middletown, CT 06457
    PHONE: 860 538 3498
    FAX:  860 346 1028
    Her Attorney

## **CERTIFICATION**

The undersigned hereby certifies that on the above date, a copy of the aforementioned was sent via first class mail to:

Joseph Jordano
Assistant Attorney General
55 Elm St.
Hartford, CT 06106

DAWNE WESTBROOK

**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| **ALLISON BISHOP** | : | **CV: NO:3:01CV1140 (AVC)** |
| As executor of the Estate | : | |
| Of Thelma Bishop, | : | |
| *Plaintiff,* | : | |
| **v.** | : | |
| | : | |
| **STATE OF CONNECTICUT** | : | |
| **CT VALLEY WHITING** | : | |
| **HOSPITAL, ET AL..** | : | **OCTOBER 27, 2003** |
| *Defendants.* | | |

<u>**PLAINTIFF'S MEMORANDUM  IN OPPOSITION OF**</u>
<u>**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**</u>

### I.    INTRODUCTION

This is an employment discrimination action brought by the plaintiff prior to her

death.  The plaintiff passed away in September of 2002, but her claim of discrimination

lives.  The plaintiff suffered a great indignity at the hands of the defendants and her

family continues to seek justice.

### II.    FACTS

Throughout the plaintiff's employment, the defendants orchestrated and carried out a

campaign of harassment against the plaintiff, a black Guyanan-American female

employed by the State of Connecticut at the Whiting Forensic Division of the

Connecticut Valley Hospital.   Said campaign of harassment was instituted in retaliation

for the plaintiff's exercise of her constitutionally protected rights under the first

amendment, to due process and to equal protection of law.  In imposing punishment upon

the plaintiff which was not commensurate with that meted out to similarly situated

employees not of the plaintiff's ethnic, national and racial background or age, or those

who had exercised their first amendment rights, the defendants intentionally and

maliciously discriminated against the plaintiff on the basis of her race, national origin and

ethnicity or age, and retaliated against her for complaining about prior discriminatory

treatment.

For an extended period of time, the plaintiff had to work in a hostile and

dangerous work environment.  The plaintiff had been harassed and had been subjected to

a pattern of harsher discipline than similarly situated employees not of her race, color,

ancestry, national origin and age, and had been subjected to a pattern of being disciplined

in retaliation for complaining about mistreatment by fellow employees and supervisors.

During the course of her employment with the defendant State, the plaintiff was the

victim of a vicious physical assault at her workplace.  The plaintiff made a formal

complaint to her employer about this inexcusable behavior.  After that time, the plaintiff

was subjected to constant harassment, mistreatment and unfair discipline.  The

defendants punished and derided her for the way she speaks, the way she dressed and constantly made groundless and unfair criticisms of her work.   The defendants Caplan and Morrison systematically and continuously engaged in a pattern of harassment of the plaintiff, by, inter alia, subjecting her to a myriad of disciplinary actions, and by reducing the plaintiff's work performance evaluations.

Specifically, on June 25,1998, the plaintiff was unfairly disciplined by the defendant Caplan.  The plaintiff exercised her right to pursue a grievance of this unfair discipline, and was the target of retaliatory behavior by the defendants from that time on. On April 28, 1999, the plaintiff was again unfairly disciplined.  The plaintiff was treated significantly more harshly than similarly situated personnel not of her race, color, ancestry, age, national origin and those who had not made complaints about the defendants.   On October 28,1999, the plaintiff was again unfairly disciplined, by the defendants Caplan and Morrison.  The plaintiff was treated significantly more harshly than similarly situated personnel not of her race, color, ancestry, age, national origin and those who had not made complaints about the defendants.  The plaintiff again exercised her right to pursue a grievance of this unfair discipline, and was the target of retaliatory behavior by the defendants.   On March 12, 2000, the plaintiff was once again unfairly disciplined.  And again she was treated significantly more harshly than similarly situated

personnel not of her race, color, ancestry, age, national origin and those who had not made complaints about the defendants.  On May 9, 2000, the plaintiff was called to Unit Three by defendant Supervisor David Lewis, who demanded to speak with the plaintiff immediately.  At that time it was approximately 6:50 a.m., and the plaintiff had no idea why she was being called in.  The plaintiff explained to defendant Lewis that she still had duties to perform, and asked him if they could schedule a meeting for another time.  Defendant Lewis refused, and demanded that the plaintiff appear in his office immediately.  Defendant Lewis also instructed the plaintiff to bring a union representative with her.  Thereafter, defendant Debbie Roth came to the plaintiff's worksite and walked her out of her unit, in full view of her colleagues and patients.  The process of "walking out" an employee is reserved for the most serious, severe or dangerous instances of misconduct by an employee.  "Walking out" an employee is accomplished by one or more supervisors or security personnel surrounding an employee and physically "walking" that employee out of the workplace.  The plaintiff was then taken to defendant Lewis' office.  Awaiting her were defendant Carol Caplan and defendant Pamela Morrison.  Defendant Caplan immediately demanded to know if the plaintiff was planning on commencing a lawsuit against her employer and individuals at the plaintiff's workplace, including Caplan, Lewis and Morrison.  The plaintiff informed

4

her that she did intend to sue based upon the treatment she was receiving, and continues

to receive.    After this incident, the defendants' actions toward the plaintiff became even

more openly hostile, aggressive and abusive.  Defendant Caplan thereafter became even

more hostile toward the plaintiff, and downright nasty in her language, tone and

interactions with her.  Defendant Caplan was demeaning and belittling to the plaintiff,

rather than instructive and helpful as a Unit Chief should be.  Thereafter, on June 15,

2000, the plaintiff was once again unfairly disciplined.  On this occasion, the plaintiff

was subjected to a written warning which was placed in her personnel file.  Through the

most recent written warning, the defendants imposed upon the plaintiff and her

employment stringent and onerous conditions not imposed upon similarly situated

personnel not of her race, color, ancestry, age, national origin and those who have not

made complaints about the defendants, or voiced their intention to sue, or actually availed

themselves of redress processes available to them.

   On July 10, 2002 the plaintiff went to the med room to perform her work duties.  In

the med room, the plaintiff encountered a co-worker Ms. Statchen.  The plaintiff

requested her assistance in completing a work task.  Ms. Statchen turned to the plaintiff

and told her, "you know you only have a [nursing] license because you are black, and you

are old, why don't you retire and be done with it"!!  The plaintiff was astonished at the

statement and immediately went to get a supervisor.   As the plaintiff was picking up the

phone, Ms. Statchen grabbed hold of her hand and wrenched the phone away preventing

her from calling the supervisor. The plaintiff was eventually able to call the supervisor

and report the incident. Ms. Statchen reacted by closing the door and blocking it so the

plaintiff could not get out. The plaintiff asked Ms. Statchen if she was refusing to let her

out of the room and keeping the plaintiff against her will. The employee let her out of the

door and remarked, "Are you going to file a lawsuit out of this too, I have lawyers in my

family too you know." The above remark was made while the supervisor was present

counting the narcotics. The plaintiff again filed a formal complaint in writing with the

supervisor and no action was taken against the employee.

In each of the instances where the defendants have disciplined the plaintiff, the

defendants have consistently ignored what the plaintiff related to them about the alleged

instances. In each situation, the defendants treated the plaintiff as if what she says and

feels does not matter. The defendants were attempting to get rid of the plaintiff prior to

her death, either by firing her or by forcing her out of the job she loved and had worked

very hard at.

## II. STANDARD

Under Fed. R. Civ. P. 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admission son file, together with the affidavits, if any, show that there is no genuine issue as to any material fact that the moving party is entitled to a judgment as a matter of law."  The Court must draw all reasonable inferences in the light most favorable to the party opposing the motion, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986), mindful that "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of the judge." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)

To raise a genuine issue of material fact sufficient to defeat a summary judgment motion, the opponent need not match, item for item, each piece of evidence proffered by the moving party.  So long as the opponent has offered enough evidence to exceed the "mere scintilla" threshold, summary judgment is to be denied.  In re Unisys Savings Plan Litigation, supra, 74 F.3d 420, 433.

Even if the nonmoving party's evidence appears "implausible," the court may not "weigh" the evidence and must proceed with the greatest caution.  R. B. Ventures, Ltd. v. Shane, 112 F.3d 54, 58-59 (2d Cir. 1997). "A dispute regarding a material fact is genuine 'if the

evidence is such that a reasonable jury could return a verdict for the non moving party.'
Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Thus, '[i]f, as to the issue on
which summary judgment is sought, there is any evidence in the record from which a
reasonable inference could be drawn in favor of the opposing party, summary judgment is
improper.'" Lazard Freres & Co. v. Protective Life Ins. Co., 108 F.3d 1531, 1535 (2d Cir.
1997). Citing Gummo v. Village of Depew, 75 F.3d 98, 107 (2d Cir. 1996).

### III. ARGUMENT

#### A. Personal Jurisdiction Was Not Properly Challenged

Rule 12(b)(5) allows for dismissal for insufficiency of service of process . The
defendant bears the burden of proof when challenging sufficiency of service of process .
Bally Export Corp. v. Balicar, Ltd., 804 F.2d 398, 404 (7th Cir. 1986). Objections to the
service of process "must be specific and point out in what manner the plaintiff has failed
to satisfy the service provision utilized." O'Brien v. R.J. O'Brien & Assocs., Inc., 998
F.2d 1394, 1400 (7th Cir. 1993) (quoting Photolab Corp. v. Simplex Specialty Co., 806
F.2d 807, 810 (8th Cir. 1986).

In the case at hand, the defendants rely on the answer submitted by the defendants in
September 2001 which raises the issue as the Third Affirmative Defense. (defendant's
answer - Exhibit A) The defense lacks specificity and fails to point out the manner in

which the plaintiff has failed to satisfy service.  The defendant's did not file a motion to dismiss and at no time other than the present Motion explained the reasons for the claim of lack of service of process.  Absent some specificity as to how service was not perfected, the defendants have not bore their burden of proof to establish lack of service. For the first time the defendants make the claim that the individual served was not authorized to accept service.

Rule 4 is to be construed liberally," McGann v. New York, 77 F.3d 672, 674 (2d Cir. 1996) (per curiam)  Thus, the knowledge that the defendants in fact have actual knowledge of the claims against them for the past two years coupled with the lack of specificity about the claim of lack of service, must be construed as a waiver of the issue.

**B.  Plaintiff Has Made a Prima Facie Case for Hostile Work Environment**

"To make out a prima facie case, the plaintiff must show that:  (i) she is a member of a protected class; (ii) she was qualified for the position; (iii) the defendant took adverse action against her; and (iv) the adverse action occurred under circumstances giving rise to an inference of discrimination." Harper v. Metropolitan District Commission, 134 F. Supp. 2d 479, 483 (D. Conn. 2001) (Covello, C.J.).  Stated another way, a plaintiff may make out a prima facie case "by showing that she is within a protected group; that she is qualified for the position; that she was subject to an adverse employment action...; and

that a similarly situated employee not in the relevant protected group received better treatment." McGuinness v. Lincoln Hall, 263 F.3d 49, 53 (2d Cir. 2001). "Alternatively, the fourth prong of the prima facie case may be satisfied if the plaintiff can demonstrate that the...adverse employment action occurred under circumstances giving rise to an inference of discrimination on the basis of plaintiff's membership in that class." Farias v. Instructional Systems, Inc., 259 F.3d 91, 98 (2d Cir. 2001).

"To establish a prima facie case of disparate treatment, a plaintiff must show, inter alia, that she was subjected to adverse employment action, under circumstances giving rise to an inference of prohibited discrimination." Fitzgerald v. Henderson, 251 F.3d 345, 356 (2d Cir. 2001). "In an employment discrimination case, the plaintiff has the burden of 'proving by the preponderance of the evidence a prima facie case of discrimination.'" Chambers v. TRM Copy Centers Corp., 43 F.3d 29, 37 (2d Cir. 1994), quoting Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 252-53 (1981). A plaintiff need not necessarily prove a prima facie case to prevail, however. "For instance, if a plaintiff is able to produce direct evidence of discrimination, he may prevail without proving all the elements of a prima facie case." Swierkiewicz v. Sorema N.A., 122 S. Ct. 992, 997 (2002).

The plaintiff has more than established a prima facie case of employment discrimination. The plaintiff has sited NUMEROUS incidents that a fact finder can reasonably infer discrimination from. (see Exhibits B and C – Plaintiff's CHRO complaints) The plaintiff was disciplined a myriad of times for not only minor incidents, but incidents that other similarly situated employees were not disciplined for. In addition to the harassment, after the plaintiff complained about an assault, the plaintiff was disciplined on 6/25/98, 10/28/00, 3/12/00, 5/9/00, 6/15/00 and 7/10/02. (see Exhibit D )

The plaintiff was also aware of similarly situated employees who were accused of the same thing as the plaintiff, but who were not disciplined. The plaintiff in her deposition spoke about Ms. Statchen who as also accused of failing to perform bed checks. When the plaintiff was accused of failing to perform bed checks, she received a written warning (which is a step above a verbal warning). When Ms. Statchen was accused of failing to perform bed checks she was not disciplined at all. (see plaintiff's deposition at 159-161 – Exhibit D ) On another occasion, the plaintiff was disciplined for an error in administering medication. Another similarly situated employee, Dave Pavis, also made an error in administering medication. Mr. Pavis was NOT disciplined for making the same error. (see plaintiff's deposition at 90-91 – Exhibit D) In fact, the defendants

required the plaintiff to be retrained because of her error in administering medication. The plaintiff was sent to defendant Caplan for six weeks to learn how to administer medication. (see plaintiff's deposition at 96 – Exhibit D ) No other employee was subject to this.

In addition the plaintiff was subject to a hostile and DANGEROUS work environment on more than one occasion. In her deposition, the plaintiff recounts at least three incidents where she was physically accosted. (see plaintiff's deposition at 53 – Exhibit D) The plaintiff was not only pushed by a co-worker, Ms. Fairbrother, but another co-worker, Ms. Traub, attempted to touch the plaintiff saying she was sexy. (Exhibit D at 51) Apparently Ms. Traub thought it funny that the plaintiff, a 70 year old woman at the time, had been disciplined for wearing tight shirts. A third incident by a co-worker, Ms. Talbot, was recounted as Ms. Talbot grabbed the plaintiff's jewelry.

The plaintiff was also forced to wear a lab coat over her regular clothing, unlike other employees. The plaintiff was asked to wear a lab coat because of her waist or bust. (Exhibit D at 125) NO other nurse was required to wear a lab coat.

There is direct evidence of discrimination. Defendant Caplan also made fun of the way the plaintiff speaks. (Exhibit D at 118) When the plaintiff would complain about defendant Caplan's ridicule and explain that "this is the way we say it in Guyana",

defendant Caplan would often remark, "well you're not in Guyana now." (Exhibit D at 118-119 )

The plaintiff also recounted an incident where she was warned by another employee to watch out for the defendants. The employee told her that the defendants had instructed employees to "write everything down, and we'll get rid of her." (Exhibit D at 76)

"The plaintiff's burden of establishing a prima facie case of employment discrimination is 'not onerous.' Burdine, 450 U.S. at 253. Indeed, "[t]he nature of the plaintiff's burden of proof is de minimis." Harper v. Metropolitan District Commission, 134 F. Supp. 2d 470, 483 (D. Conn. 2001) (Covello, C.J.), citing Dister v. Continental Group, Inc., 859 F.2d 1108, 1114 (2d Cir. 1988). "As we have often emphasized, the burden of establishing this prima facie case in employment discrimination cases is 'minimal.'" McGuinness v. Lincoln Hall, 263 F.3d 49, 53 (2d Cir. 2001). Direct evidence is not necessary, and a plaintiff charging discrimination against an employer is usually constrained to rely on the cumulative weight of circumstantial evidence. See Rosen v. Thornburgh, 928 F.2d 528, 533 (2d Cir. 1991) ('An employer who discriminates is unlikely to leave a 'smoking gun,' such as a notation in an employee's personnel file, attesting to a discriminatory intent.')." Luciano v. Olsten Corp., 110 F.3d 210, 215 (2d Cir. 1997). Often, "[w]hat is most revealing of the true intention behind the [adverse

13

employment action] is the timing." Harper v. Metropolitan District Commission, 134 F.

Supp. 2d 470, 489 (D. Conn. 2001) (Covello, C.J.).

A plaintiff asserting that her employer is liable for the unlawful actions of her co-

workers is obligated to show that the employer knew or should have known of the

misconduct and unreasonably failed to take prompt and appropriate corrective action.

Burlington Industries v. Ellerth, 524 U.S. 742 (1998); Howley v. Town of Stratford, 217

F.3d 141, 154 (2d Cir. 2000); Fenton v. HiSAN, Inc., 174 F.3d 827, 830 (6th Cir. 1999).

Evidence that the plaintiff told a supervisor about the wrongdoing is sufficient to

establish the notice element of this test. Pollard v. E.I. DuPont de Nemours Co., 213 F.3d

933, 943 (6th Cir. 2000); Breda v. Wolf Camera & Video, 222 F.3d 886 (11th Cir. 2000).

"[I]f harassment continues after complaints are made, reasonable jurors may disagree

about whether an employer's response was adequate." Whidbee v. Garzarelli Food

Specialties, Inc., 223 F.3d 62, 72 (2d Cir. 2000); Pascal v. Storage Technology Corp.,

152 F. Supp. 2d 191, 210 (D. Conn. 2001). "If the evidence creates an issue of fact as to

whether the employer's action is effectively remedial and prompt, summary judgment is

inappropriate." Richardson v. New York State Dep't of Correctional Service, 180 F.3d

426, 440 (2d Cir. 1999), quoting Gallagher v. Delaney, 139 F.3d 338, 348 (2d Cir. 1998).

In the case at hand, the plaintiff made numerous complaints about the harassment and discriminatory treatment of her employer.  A reasonable jury may infer discrimination from this.

### C.  Plaintiff Can Show that Defendants' Legitimate Non-Discriminatory Reason is Pretextual

The employer may seek to rebut the prima facie case by proof of a legitimate nondiscriminatory reason for the adverse employment action.  If the plaintiff is able to persuade the jury that the employer's explanation is false, however, that fact, combined with the prima facie case, is sufficient to permit a jury to find intentional discrimination. "Proof that the defendant's explanation is unworthy of credence is...one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive....In appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose.  Such an inference is consistent with the general principle of evidence law that the factfinder is entitled to consider a party's dishonesty about a material fact as 'affirmative evidence of guilt.'"  Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 120 S. Ct. 2097, 108 (2000), quoting Wright v. West, 505 U.S. 277, 296 (1992). "The factfinder's disbelief of the reasons put forward by the defendant (particularly if

disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination. Thus, rejection of the defendant's preferred reasons will permit...the trier of fact to infer the ultimate fact of intentional discrimination...[and] no additional proof of discrimination is required." St. Mary's Honor Center v. Hicks, 509 U.S. 502, 511 (1993). "[O]nly occasionally will a prima facie case plus pretext fall short of the burden a plaintiff carries to reach a jury on the ultimate question of discrimination...." Slattery v. Swiss Reinsurance America Corp., 248 F.3d 87, 94 (2d Cir. 2001).

 At the summary judgment stage, the Court should not make any finding as to whether [a defendants] reason was, in fact, false. Rather, the Court must determine whether, after casting all of the facts of the case in the light most favorable to [the plaintiff]  and drawing all inferences from those facts in favor of [the plaintiff], a rational jury could come to the conclusion that [the defendants] justification for [a particular action] is false. Peralta V. Cendant Corp 123 F.Supp.3d 65 (2000) "If, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper." Gummo v. Village of Depew, 75 F.3d 98, 107 (2d Cir. 1996).

In the case at hand, the employer describes the plaintiff as an extremely problemed employee.  Her employer contends that the plaintiff's negative attitude toward other staff, her diminished accountability, and reluctance to accept constructive criticism are the real cause of the plaintiff's adverse work situation. (see defendants' position statement to 2002 CHRO complaint – Exhibit E)  However, the plaintiff worked in the same position at another facility, Fairfield Hills for two years.  She never received an unfavorable evaluation.  There were never any complaints about her making errors.  There were never complaints filed against the plaintiff.  She was never disciplined or counseled by Fairfield Hills.  (see Exhibit D – Plaintiff's partial deposition at 49-50)  Yet her employment with the defendants is marked with disciplinary incidents.  The plaintiff was disciplined on 6/25/98, 10/28/00, 3/12/00, 5/9/00, 6/15/00 and 7/10/02. (see exhibit )  On several of the disciplinary incidents, the plaintiff was aware of a similarly situated individual who was not disciplined.

The timing of the disciplinary incidents is also telling.  Each disciplinary incident occurring after she complained about the assault that took place at her place of employment.  The plaintiff even filed an action with the Worker's Compensation Commission that the employer contested.  The claim resulted in a Stipulated Agreement. (see Exhibit F – Stipulation to Date)  Not only does all this give rise to an inference of

17

discrimination, but the plaintiff claimed retaliation for the exercise of her First Amendment rights.  A reasonable fact finder can infer that the plaintiff was disciplined in response to her many complaints.

In addition, there is direct evidence of discrimination.  The plaintiff's claims of being teased for her language, being physically assaulted, being told that she is only there because she's old and black CANNOT be explained by the defendant.  (see plaintiff's 2002 CHRO complaint and plaintiff's deposition – Exhibits C) The defendant's cannot produce a legitimate non discriminatory reason for these occurrence.  All the defendant can do is say it did not happen.  This would then be a question of fact to be determined by a fact finder and not the Court.

"[S]ummary judgment...is particularly inappropriate where the inferences which the parties seek to have drawn deal with questions of motive, intent, and subjective feelings and reactions."  Suarez v. Dickmont Plastics Corp., 229 Conn. 99, 111, 639 A.2d 507 (1994).  "A question of intent raises an issue of material fact, which cannot be decided on a motion for summary judgment."  Picataggio v. Romeo, 36 Conn. App. 791, 794, 654 A.2d 382 (1995).  When passing upon a motion for summary judgment, the court may not resolve factual disputes or make credibility determinations, even if the case is one which eventually will be tried without a jury.  In re Unisys Savings Plan Litigation, 74 F.3d 420

(3d Cir. 1996). Rather, the court must resolve any ambiguities and draw all inferences

against the moving party. <u>Appleton v. Board of Education</u>, 254 Conn. 205, 757 A.2d

1059 (2000); <u>Cargill, Inc. v. Charles Kowsky Resources, Inc.</u>, 949 F.2d 51 (2d Cir.

1991). The evidence of the party against whom summary judgment is sought must be

believed. Revak v. SEC Realty Corp., 18 F.3d 81 (2d Cir. 1994). The court must

construe the evidence in the light most favorable to the party opposing summary

judgment and deny the motion unless no construction of the evidence could support

judgment in the plaintiff's favor. <u>Appleton, supra; Adickes v. S. H. Kress & Co.</u>, 398

U.S. 144, 157 (1970); <u>Olin Corp. v. Consolidated Aluminum Corp.</u>, 5 F.3d 10, 14 (2d

Cir. 1993); <u>United States v. Certain Funds on Deposit in Scudder Tax Free Investment</u>

<u>Account #2505103</u>, 998 F.2d 129 (2d Cir. 1993); Union Pacific Corp. v. United States, 5

F.3d 523, 525 (Fed. Cir. 1993); <u>Suarez v. Dickmont Plastics Corp.</u>, 229 Conn. 99, 105

(1994); <u>D.H.R. Construction Co. v. Donnelly</u>, 180 Conn. 430, 434 (1980); Connell v.

Colwell, 214 Conn. 242, 246-47 (1990).

**D. Plaintiff has Suffered Adverse Employment Actions from the Discrimination**

Adverse employment actions are not confined to instances of pecuniary emoluments,

since a diminution of duties or a transfer to a position with less opportunity for

advancement may also constitute an **adverse employment action** .<u>Rodriguez v. Board of</u>

Education, 620 F.2d 362, 366 (2d Cir.1980); de la Cruz v. New York City Human

Resources Admin. Dept. of Social Services, 82 F.3d 16, 21 (2d Cir.1996). Plaintiff must

sustain a "materially **adverse** change in the terms and conditions of **employment** ."

Galabya v. New York City Bd. of Educ. , 202 F.3d 636, 640 (2d Cir.2000) (internal

quotation marks omitted). A transfer or denial of a transfer, absent some materially

**adverse** consequences affecting the terms, conditions, or privileges of **employment** ,

does not amount to an **adverse** change in working conditions. Brown v. Brody , 199 F.3d

446, 457 (D.C.Cir.1999) (holding Title VII plaintiff's non-selection for desired lateral

transfer did not constitute an **adverse** personnel action); Cooper v. New York State Dep't

of Human Rights , 986 F.Supp. 825, 828 (S.D.N.Y.1997). There must be a material loss

of benefits. *Galabya* , 202 F.3d at 641-42. "If reasonable minds could differ as to the

import of the evidence...and if...there is any evidence in the record from any source from

which a reasonable inference in the nonmoving party's favor may be drawn, the moving

party simply cannot obtain a summary judgment." Id. at 59, quoting Brady v. Town of

Colchester, 863 F.2d 205, 211 (2d Cir. 1988), and In re Japanese Elec Prods. Antitrust

Litigation, 723 F.2d 238 (3d Cir. 1983) (internal quotation marks omitted).

    In the case at hand, the defendants have advanced an argument that assumes adverse

employment actions only involve monetary losses.  When in fact the plaintiff was

continually harassed, having been disciplined a number of times; she was physically

assaulted on more than one occasion; she was taunted for the way she spoke; she was

interrogated about whether or not she would be filing a lawsuit; she was given

unfavorable evaluations in retaliation for her complaint; she was forced to wear different

clothing than other employees; and she was disciplined more harshly than other similarly

situated employees. (Exhibit D)

As to the issue of damages, the adverse actions are actionable even if the plaintiff

suffered no monetary loss.  Punitive damages are available to plaintiffs in Title VII

actions if the plaintiff is able to establish that "the employer has engaged in intentional

discrimination and has done so 'with malice or with reckless indifference to the federally

protected rights of an aggrieved individual.'" Kolstad v. American Dental Ass'n, 527

U.S. 526, 529-30 (1999) (quoting 42 U.S.C. § 1981a(b)(1)); Farias v. Instructional

Systems, Inc., 259 F.3d 91, 101 (2d Cir. 2001).

E. **Plaintiff can Prove a Prima Facie Case of Selective Enforcement under the
Equal Protection Clause**

"[W]here a plaintiff seeks to make out her prima facie case by pointing to the

disparate treatment of a purportedly similarly situated employee, the plaintiff must show

that she shared sufficient employment characteristics with that comparator so that they

could be considered similarly situated....In Shumway [v. United Parcel Service, Inc., 118

F.3d 60 (2d Cir. 1997)], we explained that such an employee 'must be similarly situated

in all material respects' – not in all respects.  118 F.3d at 64 (emphasis added).  A

plaintiff is not obligated to show disparate treatment of an identically situated employee.

To the contrary, Shumway holds that in those cases in which a plaintiff seeks to establish

her minimal prima facie case by pointing to disparate treatment of a similarly situated

employee, it is sufficient that the employee to whom the plaintiff points be similarly

situated in all material respects....In other words, where a plaintiff seeks to establish the

minimal prima facie case by making reference to the disparate treatment of other

employees, those employees must have a situation sufficiently similar to plaintiff's to

sup0port at least a minimal inference that the difference of treatment may be attributable

to discrimination." McGuinness v. Lincoln Hall, 263 F.3d 49, 53-54 (2d Cir. 2001).

The McGuinness court added in a footnote, at p. 54: "[B]ecause a Title VII plaintiff may

establish a prima facie case of discrimination in a number of different ways depending on

the specific facts of a given case, Shumway does not require that a plaintiff always be

able to show disparate treatment of an otherwise similarly situated employee as a

necessary prerequisite to a prima facie case under Title VII."

The plaintiff was aware of similarly situated employees who were accused of the same thing as the plaintiff, but who were not disciplined. The plaintiff in her deposition spoke about Ms. Statchen who as also accused of failing to perform bed checks. When the plaintiff was accused of failing to perform bed checks, she received a written warning (which is a step above a verbal warning). When Ms. Statchen was accused of failing to perform bed checks she was not disciplined at all. (see plaintiff's deposition at 159-161 – Exhibit D ) On another occasion, the plaintiff was disciplined for an error in administering medication. Another similarly situated employee, Dave Pavis, also made an error in administering medication. Mr. Pavis was NOT disciplined for making the same error. (see plaintiff's deposition at 90-91 – Exhibit D) In fact, the defendants required the plaintiff to be retrained because of her error in administering medication. The plaintiff was sent to defendant Caplan for six weeks to learn how to administer medication. (see plaintiff's deposition at 96 – Exhibit D) No other employee was subject to this. The plaintiff was also forced to wear a lab coat over her regular clothing, unlike other employees. The plaintiff was asked to wear a lab coat because of her waist or bust. (exhibit at 125) NO other nurse was required to wear a lab coat.

### F.  QUALIFIED IMMUNITY

In cases involving clearly established rights, the entitlement to qualified immunity

generally turns on the particular facts of the case. <u>Robison v. Via</u>, 821 F.2d 913, 921 (2d

Cir.1987). A court, however, may still decide the qualified immunity issue on a motion

for summary judgment, if the defendant can prove that "no reasonable jury, looking at the

evidence in the light most favorable to, and drawing all inferences most favorable to, the

plaintiff[ ], could conclude that it was objectively unreasonable for the defendants to

believe that he was acting in a fashion that did not clearly violate an established federally

protected right." <u>Lennon v. Miller</u>, 66 F.3d 416, 420 (2d Cir.1995) (citations and internal

quotations omitted). *See also Crawford-El*, 118 S.Ct. at 1594. Generally, a government or

municipal officer's actions are considered objectively unreasonable "when no officer of

reasonable competence could have made the same choice in similar circumstances."

<u>Lennon</u>, 66 F.3d at 420-21.

　　It is clear that, if only a legal issue is presented, the defendant's summary judgment

motion may be granted. It is equally clear that, if there are material issues of fact as to the

claim of qualified immunity, summary judgment must be denied. Unfortunately, many

claims of qualified immunity raise mixed questions of law and fact. One treatise has

suggested that "[w]hen the resolution of a claim of qualified immunity is dependant upon

factual issues that are in dispute, a court should not attempt to force the immunity issue

into the question of law cubicle when it rightfully belongs in the fact-finding arena." 1B

Schwartz & Kirklin, *supra* ¶ 9.34, at 497.

"Most executive officials receive qualified immunity, whereby 'government officials

performing discretionary functions . . . are shielded from liability [for civil damages]

insofar as their conduct does not violate clearly established statutory or constitutional

rights of which a reasonable person would have known.'"(fn6) Scotto v. Almenas, 143

F.3d 105, 110 (2d Cir.1998) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct.

2727, 73 L.Ed.2d 396 (1982), and citing Anderson v. Creighton, 483 U.S. 635, 638, 107

S.Ct. 3034, 97 L.Ed.2d 523 (1987)); *see* also X-Men Sec., Inc. v. Pataki, 196 F.3d 56, 65

(2d Cir. 1999) (quoting *Harlow,* 457 U.S. at 818, 102 S.Ct. 2727). " Qualified immunity

is an affirmative defense. The burden rests on the defendants to raise the defense in their

answer and to establish the defense on a motion for summary judgment or at trial." Lee v.

Sandberg, 136 F.3d 94, 101 (2d Cir.1997) (citation omitted).

There remain material issues of facts in the case.  As defendants admit in their

brief, it is likely an equal protection violation is a clearly established right.  In addition,

the plaintiff has offered more than credible evidence to suggest that she was treated

differently than other similarly situated employees AND that her first amendment rights

were violated.   As to the credibility of the evidence the plaintiff is offering, that is for a

jury to determine. Thus defendants' argument that the plaintiff has not offered credible

evidence is without merit. The plaintiff's deposition was videotaped. So a jury will be

able to not only hear what the plaintiff has said, but to see her as she tells her story.

As stated above, the plaintiff was aware of many situations where similarly situated

employees were treated differently. In addition, the plaintiff made allegations of direct

discrimination. These are questions of fact that MUST be determined by the jury.

## CONCLUSION

For the reasons stated above, the plaintiff respectfully request that the motion for

summary judgment be denied.

THE PLAINTIFF

BY: _____

DAWNE WESTBROOK
Federal Bar No. ct21987
PO BOX 2502
Middletown, CT 06457
860 538 3498
FAX: 860 346 1028
Her Attorney

**CERTIFICATION OF SERVICE**

On the date above stated, copies hereof were mailed to:

Joeseph Jordano, AAG
55 Elm St.,
Hartford, CT 06106

DAWNE WESTBROOK