

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **ALLISON BISHOP** | : | CV: NO:3:01CV1140 (AVC) |
| As executor of the Estate | : | |
| Of Thelma Bishop, | : | |
| *Plaintiff*, | : | |
| v. | : | |
| | : | |
| **STATE OF CONNECTICUT** | : | |
| **CT VALLEY WHITING** | : | |
| **HOSPITAL, ET AL..** | : | OCTOBER 27, 2003 |
| *Defendants*. | | |

### PLAINTIFF'S LOCAL RULE 56(a)2 STATEMENT

1. Admit.

2. Admit

3. Admit

4. Admit

5. Admit

6. Admit

7. Admit

8. Admit.

9. Deny.

10. Deny. The defendants were served.

11. Admit

12. Admit

13. Deny

14. Admit

15. Plaintiff can neither confirm nor deny

16. Plaintiff has insufficient information to support defendants' claim that there is a written policy on proper attire because male patients are "easily sexually aroused".

17. Plaintiff has insufficient information to support the claim that some items of clothing are dangerous. Defendants have provided no evidence of previous injuries involving the same.

18. Admit

19. Admit.

20. Admit.

21. Admit

22. Deny. Plaintiff's work was always "acceptable".

23. Admit.

24. Deny. The physician failed to change the orders. The plaintiff administered the same dosage the patient had received in the past. The plaintiff was not told of a change. (exhibit D at 78-79)

25. Deny. The plaintiff was not confused. She very clearly stated that she was not told about the change in the order. (exhibit D at 79)

26. Admit in part. The plaintiff was sent for retraining, but the purpose not to bring her nursing practices up to standards. (exhibit D at 96)

27. Plaintiff has insufficient information to admit or deny.

28. Deny. The plaintiff was disciplined. (exhibits B,C and D, see also disciplinary incidents of 6/25/98, 10/28/99, 3/12/00, 5/9/00, 6/15/00 and 7/10/02)

29. Deny. The plaintiff was forced to wear a lab coat over her regular clothing, unlike other employees. The plaintiff was asked to wear a lab coat because of her waist or bust. NO other nurse was required to wear a lab coat. (exhibit D at 111, 125)

30. Admit!

31. Deny.

32. Deny. The plaintiff was forced to wear a lab coat – this was not done to accommodate her individuality. (exhibit 111, 125)

33. Admit.

34. Admit

35. Admit

36. Admit

37. Admit

38. Admit

39. Admit

40. Deny.

41. Deny. The adjectives used to describe the plaintiff's behavior are a matter of opinion.

42. Deny.

43. Admit

44. Deny. The plaintiff was counseled. Oral counseling is a form of discipline. (Exhibit D at 19)

45. Admit

46. Admit in part. The plaintiff originally stated that she believed verbal counseling was discipline, but upon prompting from the deposer, she recanted. (exhibit D at 19-20)

47. Deny. The plaintiff was taken to Supervisor Lewis' office. Awaiting her were Carol Caplan, Mrs. Morrison, and Dennis Wimble. Caplan immediately demanded to know if the plaintiff was planning on commencing a lawsuit against her employer and individuals at her workplace. (exhibit B at 12)

48. Admit.

49. Deny. The plaintiff never had employment problems with her language, nursing skills, dress, or work until she came to the defendant employer. (exhibit D at 49-50)

50. Deny. The plaintiff was disciplined more harshly than other similarly situated employees. (Exhibit D at 90-91, 96, 125, 159-161 )

51. Deny. The plaintiff was not afforded due process and often did not have union representation. (exhibit D at 127, exhibit B para.9-12)

52. Admit.

53. Deny. There were several similarly situated employees who were not disciplined. (Exhibit D at 90-91, 96, 125, 159-161)

54. Deny. (Exhibits B, C, & D)

55. Deny. Defendant's "bent over backwards" to treat the plaintiff's more harshly than other similarly situated employees. The plaintiff was sent for additional

training, but no other employee accused of similar violations was. ( Exhibit D at 96)

56. Admit

57. Plaintiff can neither confirm nor deny whether defendant Caplan recollects the plaintiff's complaint, nor what defendant Caplan "would have done" if the defendant recalled the plaintiff's complaint.

58. Deny. The plaintiff complained about being made to wear a lab coat because of her figure. The plaintiff also complained about co-worker Traub, telling her she was sexy and attempting to touch her.

59. A release of jurisdiction is not applicable in federal court. The plaintiff needed a right to sue letter from the US Department of Justice.

60. Admit.

61. Deny. The plaintiff received poor evaluations in retaliation for her complaints.?

62. Admit

63. Admit

64. Deny. The plaintiff knew of at least one other employee who was not disciplined for failing to do bed checks. (exhibit D at 159-161)

65. Admit

66. Admit in part. Defendant's have produced no policy that requires that an employees keys be taken when meeting outside a secured area.

67. Deny. As the defendant says, "contrary to Bishop's testimony." The plaintiff was walked out as part of a disciplinary process. (Exhibits B at 11 and D)

68. The plaintiff can neither confirm nor deny this assertion as there is no documentation of employees declining to work based on the plaintiff's presences.

69. Admit

70. Deny. The plaintiff maintains that Ms. Statchen was accused of failing to perform bed checks she was not disciplined at all. (Exhibit D at 159-161)

## PLAINTIFF'S STATEMENT OF MATERIAL FACTS

1. The plaintiff was a registered nurse, employed by the State of Connecticut at the Whiting Forensic Division of the Connecticut Valley Hospital. (exhibit B, para.1)

2. The plaintiff was a black female, of Guyanan ancestry and national origin. (exhibit B, para. 2)

3. For an extended period of time, the plaintiff had to work in a hostile and dangerous work environment. (exhibit B, para 3)

4. The plaintiff was harassed and subjected to a pattern of harsher discipline than similarly situated employees not of her race, color, ancestry, national origin and age. (exhibit B, para. 3; exhibit D at 51-53, 90-91, 96, 118-119, 125, 159-161)

5. The plaintiff was subjected to a pattern of being disciplined in retaliation for complaining about mistreatment by fellow employees and supervisors. (exhibit B at para. 3, exhibit D disciplinary incidents of 6/25/98, 10/28/99, 3/12/00, 5/9/00, 6/15/00 and 7/10/02)

6. The plaintiff was the victim of a vicious physical assault at her workplace. (exhibit B at para. 4, exhibit D at 28, 51, 111)

7. The plaintiff made a formal complaint to her employer about this inexcusable behavior. Since then, the plaintiff was subjected to constant harassment,

mistreatment and unfair discipline. (exhibit B at para. 4, exhibit D at 28 and also see disciplinary incidents of 6/25/98, 10/28/99, 3/12/00, 5/9/00, 6/15/00 and 7/10/02)

8. The defendants punished and derided her for the way the she spoke and the way she dressed and constantly criticized her work. (exhibit B at para. 4, exhibit D at 118, 125 and the disciplinary incidents of 6/25/98, 10/28/00, 3/12/00, 5/9/00, 6/15/00 and 7/10/02)

9. On June 25,1998, the plaintiff was unfairly disciplined. The plaintiff exercised her right to pursue a grievance of this unfair discipline, and the plaintiff was the target of retaliatory behavior by the defendants as a result. (exhibit B at para. 5)

10. On April 28, 1999, the plaintiff was unfairly disciplined. The plaintiff was treated significantly more harshly than similarly situated personnel not of her race, color, ancestry, age, national origin and those who have not made complaints about the defendant. (exhibit B at para. 6)

11. On October 28,1999, the plaintiff was unfairly disciplined. The plaintiff was treated significantly more harshly than similarly situated personnel not of her race, color, ancestry, age, national origin and those who have not made complaints about the defendant. The plaintiff exercised her right to pursue a grievance of this unfair discipline, and have been the target of retaliatory behavior by the defendants. (exhibit B at para. 7)

12. On March 12, 2000, the plaintiff was once again unfairly disciplined. The plaintiff was again treated significantly more harshly than similarly situated personnel not of her race, color, ancestry, age, national origin and those who have not made complaints about the defendants. (exhibit B at para. 8)

13. On May 9, 2000, at approximately 6:50am, the plaintiff was called to Unit Three by Supervisor David Lewis, who demanded to speak with her immediately. The plaintiff had no idea why she was being called in. (exhibit B at para. 9)

14. The plaintiff explained to Supervisor Lewis that she still had duties to perform, and asked him if they could schedule a meeting for another time. (exhibit B at para. 9)

15. Supervisor Lewis refused, and demanded that the plaintiff appear in his office immediately. Supervisor Lewis also instructed her to bring a union representative with her. (exhibit B at para. 9)

16. Supervisor Debbie Roth then came to the plaintiff's worksite and walked her out of her unit, in full view of her colleagues and patients. (exhibit B at para. 10)

17. The process of "walking out" an employee is reserved for the most serious, severe or dangerous instances of misconduct by an employee. "Walking out" an employee is accomplished by one or more supervisors or security personnel surrounding an employee and physically "walking" that employee out of the workplace. (exhibit B at para. 11)

18. The plaintiff was taken to Supervisor Lewis' office. Awaiting her were Carol Caplan, Mrs. Morrison, and Dennis Wimble. Caplan immediately demanded to know if the plaintiff was planning on commencing a lawsuit against her employer and individuals at her workplace. (exhibit B at 12)

19. The plaintiff informed them that she was suing based upon the treatment she received. (exhibit B at para. 12)

20. After this incident, the respondent's and its supervisors' attitude toward her became even more openly hostile, aggressive and abusive. (exhibit B at para. 13)

21. This attitude is reflected in the way the defendants' supervisors treated her and spoke with her. For instance, Carol Caplan has been very hostile and nasty in her language, tone and interactions with her. She has been demeaning and belittling to her, rather than instructive and helpful as a Unit Chief should be. (exhibit B at para. 14, exhibit D at 118)

22. When the plaintiff complained about defendant Caplan's ridicule and explain that "this is the way we say it in Guyana", defendant Caplan would often remark, "well you're not in Guyana now." (Exhibit D at 118-119)

23. On June 15, 2000, the plaintiff was once again unfairly disciplined. On this occasion, the plaintiff was subjected to a written warning that was placed in her personnel file. (exhibit B at para. 15)

24. The plaintiff was accused of failing to perform bed checks. She received a written warning. When a similarly situated employee, Ms. Statchen, was accused of failing to perform bed checks she was not disciplined at all. (Exhibit D at 159-161)

25. The plaintiff was disciplined for an error in administering medication. Another similarly situated employee, Dave Pavis, also made an error in administering medication. Mr. Pavis was NOT disciplined for making the same error. (Exhibit D at 90-91)

26. The defendants required the plaintiff to be retrained because of her error in administering medication. The plaintiff was sent to defendant Caplan for six weeks to learn how to administer medication. No other employee was subject to this treatment. (Exhibit D at 96).

27. The plaintiff was forced to wear a lab coat over her regular clothing, unlike other employees. The plaintiff was asked to wear a lab coat because of her waist or bust. NO other nurse was required to wear a lab coat. (Exhibit D at 111, 125)

28. The plaintiff was physically accosted on at least three occasions. (Exhibit D at 53)

29. A co-worker, Ms. Traub, attempted to touch the plaintiff saying she was sexy. (Exhibit D at 51)

30. Ms. Traub thought it funny that the plaintiff, a 70 year old woman at the time, had been disciplined for wearing tight shirts. (exhibit D at 51)

31. Another co-worker, Ms. Talbot, grabbed the plaintiff's jewelry. (exhibit D at 51)

32. The plaintiff was warned by another employee to watch out for the defendants. The employee told her that the defendants had instructed employees to "write everything down, and we'll get rid of her." (Exhibit D at 61, 76)

33. On July 10, 2002 the plaintiff went to the med room to perform her work duties. (exhibit C at para. 5)

34. In the med room, the plaintiff encountered a co-worker Ms. Statchen. The plaintiff requested her assistance in completing a work task. (exhibit C at para. 6)

35. Ms. Statchen turned to the plaintiff and told her, "you know you only have a [nursing] license because you are black, you are old, why don't you retire and be done with it"!! (exhibit C at para. 7)

36. The plaintiff was astonished at her statement and immediately went to get a supervisor. (exhibit C at para. 8)

37. As the plaintiff was picking up the phone, Ms. Statchen grabbed hold of her hand and wrenched the phone away preventing her from calling the supervisor. (exhibit C at para. 9)

38. The plaintiff was eventually able to call the supervisor and report the incident. (exhibit C at para. 10)

39. Ms. Statchen reacted by closing the door and blocking it so the plaintiff could not get out. (exhibit C at para. 11)

40. The plaintiff asked Ms. Statchen if she was refusing to let her out of the room and was she keeping her against her will. (exhibit C at para. 12)

41. Ms. Statchen eventually let the plaintiff out of the door and she remarked, "Are you going to file a lawsuit out of this too, I have lawyers in my family too you know." (exhibit C at para. 12)

42. Additional disparaging remarks were made while the supervisor was present counting the narcotics. (exhibit C at para. 13 )

43. The plaintiff filed a formal complaint in writing with the supervisor and no action has been taken against the employee. (exhibit C at para. 14)

THE PLAINTIFF

BY: *Dawne West*
DAWNE WESTBROOK
Federal Bar No. ct21987
PO BOX 2502
Middletown, CT 06457
PHONE: 860 538 3498
FAX:  860 346 1028
Her Attorney

## CERTIFICATION

The undersigned hereby certifies that on the above date, a copy of the aforementioned was sent via first class mail to:

Joseph Jordano
Assistant Attorney General
55 Elm St.
Hartford, CT 06106

*Dawne West*
DAWNE WESTBROOK