FILED

2003 NOV 12 A 10: 23

US DISTRICT COURT
HARTFORD CT

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

ALLISON BISHOP as Executor of the Estate of Thelma Bishop,

*Plaintiff,*

v.

STATE OF CONNECTICUT, ET AL.,

*Defendants.*

NO. 3:01CV1140(AVC)

NOVEMBER 12, 2003

**DEFENDANTS' REPLY TO THE PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION**

Plaintiff's response to summary judgment is woefully inadequate in several critical respects, namely –

1. There is NO evidence refuting insufficient service of process upon the individual defendants;
2. There is insufficient evidence for a prima facie case;
3. There is no evidence of pretext; and
4. The plaintiff has no evidence of an adverse employment action.

The defendants remind the court that Ms. Bishop is dead. Her deposition was not completed. The defendants did not have the opportunity to finish their examination of Ms. Bishop. Other than her self-serving allegations of mistreatment, there is literally no evidence of discrimination in any respect. Additionally, Bishop's own testimony

confirms that she suffered NO adverse treatment (suspension, termination, demotion, loss of pay of benefits). So what this case amounts to is a gripe session by Bishop, and now her legal heirs, who have NO actual personal knowledge of any facts material to this case. The plaintiff's response does not include a bit of corroborating evidence to support her version of events.

**LACK OF SERVICE OF PROCESS**

The Federal Rules of Civil procedure permit a defendant to raise the issue of lack of personal jurisdiction either by way of a motion to dismiss or in their answer. Rule 12 states: "No defense or objection is waived by being joined with one or more other defenses or objections in a responsive pleading." F.R.C.P. 12(b). In the present case, the individual defendants raised the defense of the lack of personal jurisdiction in their Answer to the complaint. The plaintiff conducted no discovery in this case and never inquired, by way of interrogatory, about the factual basis for this affirmative defense.

As pointed out in the defendants' brief, the detailed affidavits of defendants Morrison, Rooth, Caplan and Lewis establish that Dr. James Cassidy did not have authority to accept service of process for them in their individual capacities. (Defendants' Exs. 25, 26, 27 & 28). The plaintiff has offered no evidence to refute this fact and accordingly, the case against these defendants must be dismissed for lack of proper service of process.

**NO PRIMA FACIE CASE**

The plaintiff's Rule 56(a)(2) statement is simply a recitation of her allegations. Her evidence consistent of her own unsubstantiated CHRO allegations, portions of her deposition testimony and the agency's response to the plaintiff's 2002 CHRO complaint.

Plaintiff simply asserts factual conclusions with no corroborating evidence. It is established law in this circuit that a plaintiff cannot survive summary judgment by simply relying on his/her allegations or conclusory facts. Champion v. Artuz, 76 F.3d 483, 485 (2d Cir. 1996); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 91 L.Ed.2d. 202, 106 S.Ct. 2505 (1986); Parker v. Chrysler Corp., 929 F. Supp. 162, 165 (S.D.N.Y. 1996).

For instance, the plaintiff alleges that she was treated differently that a white male nurse who allegedly gave a wrong dose of medication. (Plaintiff's Rule 56(c)(2), ¶ 25-26). However, the plaintiff's testimony cited for this proposition disproves the point. According to the plaintiff, the male nurse, David Pavis, was required to take an examination after the medication error occurred. (Plaintiff's Ex. D, p. 95). The same was true of the plaintiff when she made a medication error. She took the National League of Nursing examination in Basic Proficiency in Medication Administration, which she failed miserably. (Defendants Rule 56(a)(1), ¶ 24-28). Bishop testified that Nurse Pavis was also required to take an examination. (Ex. D, p. 95). Nevertheless, Bishop was NEVER disciplined for this error. She was retrained, which was not an adverse employment action. So her allegations regarding this situation is meaningless.

Similarly, Bishop claims that she was unfairly disciplined on several occasions or more harshly disciplined than similarly situated employees. But again, except for her allegations, Bishop cannot refute the defendants' description of events or its legitimate reasons for counseling her about her inappropriate conduct. In each instance, Bishop was counseled or warned about her conduct, but was never disciplined that resulted in any tangible action. ( Facts, ¶¶ 33, 34, 41, 44, 45, 46, 47, 48, 62). When asked in her deposition about which employees were similarly situated to her who were not

disciplined for the same conduct, she could not recall the name of a single person. (Defendants' Facts, ¶ 53).

Bishop also alleges that she was assaulted at work on several occasions. One alleged incident was reported and thoroughly investigated. The investigation did not substantiate that an assault had occurred. (Defendants' Facts, ¶ 35, 36). The other two alleged incidents, one involving a Nurse Talbot grabbing some jewelry and a nurse Traub making some sexual comments about her own sexuality, were never reported by the plaintiff, according to Bishop. (Plaintiff's exhibit D, pp. 46:13-47:20; 51:4-52:1). But even if the latter two incidents did occur, how do these two isolated incidents prove a claim race, sex or ethnic origin discrimination? [1] How can the defendants be liable for conduct that was never reported, much less chargeable to the individual defendants?

Bishop's claim that she was discriminated against because she was forced to wear a lab coat is a half truth. She was assigned to wear a lab coat for safety reasons because she refused to abide by the dress code at Whiting that was designed to prevent incidents involving habitual sexual predators with poor impulse control. (Facts ¶¶, 15-17, 29-32). Bishop continued to wear tights pants, shirts, loose jewelry, etc. in contravention to CVH policies. She has offered no evidence that the decision to require he to wear a lab coat was done for any reason other than for safety concerns, which constitutes a legitimate nondiscriminatory reason. She has offered no evidence of other employees who wore that same type of inappropriate clothing who were treated differently.

The most glaring deficiency with the plaintiff's scant response to summary judgment is the lack of any factual evidence supporting her allegations. The defendants

---

[1] Evidence of work place assaults does not establish a constitutional violation on the part of any of the individual defendants.

offered detailed factual evidence outlining Bishop's work history at CVH, the repeated problems that management encountered in dealing with her work deficiencies and inappropriate conduct towards the staff. The plaintiff's conclusory allegations simply do not come close to establishing a prima facie case.

**NO EVIDENCE OF PRETEXT**

Assuming arguendo that the plaintiff could prove a prima facie case, her estate has absolutely no evidence to refute the defendants' legitimate nondiscriminatory reasons for the employer's conduct in order to establish a pretext for discrimination. Under the burden shifting analysis employed in Title VII cases, at this stage the burden shifts to the plaintiff to prove that the employer's stated nondiscriminatory reasons were false and a pretext for a discriminatory motive. Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 120 S.Ct. 2097 (2000).

In the present case, there is simply no evidence of pretext. Not only was the plaintiff never actually disciplined to the extend that she suffered an actual adverse employment action, but she has offered no evidence that the defendants' stated reasons for their conduct were false.[2] The agency bent over backwards to help Thelma Bishop succeed despite herself. When her nursing skills were found to be incompetent, she was retrained. When she repeatedly abused staff, mishandled the controlled medication keys or missed bed checks, she was orally counseled or issued warnings for repeated behavior. (Facts, ¶¶ 24, 25, 26, 37-39, 40-48). The plaintiff's evidence falls woefully short of the standard required to show pretext.

---

[2] The individual defendants deny taking any action that violated the plaintiff constitutional rights. The reference to "defendants" refers to the "employer" and actions taken by the individual defendants acting in their official capacities.

## NO ADVERSE EMPLOYMENT ACTION

The plaintiff response to summary judgment includes NO evidence that the plaintiff actually suffered an adverse employment action. Not every perceived slight or change in the work environment constitutes an actionable adverse employment action. In Patrolmen's Benevolent Association of City of New York v. Guiliani, 310 F.3d 43, 51 (2d Cir. 2002), the Second Circuit reiterated the rule that to be actionable the employer's conduct must be "materially adverse." According to the Circuit Court, to be materially adverse the change "must be more disruptive than a mere inconvenience or an alteration of job responsibilities." Actions such as a termination or demotion evidenced by a decrease in wages or salary, a less distinguished title, a material loss of benefits or significant diminished material responsibilities can constitute an adverse employment action. Id. at 51.

However, a written warning that does not result in tangible job consequences will rarely form a permissible predicate for a Title VII suit. Davis v. Town of Lake Park, Florida, 245 F.3d 1232, 1241 (11th Cir. 2001)(counseling memo, negative evaluation or written warning that does not lead to negative tangible job consequences are not adverse employment action). See also, Galabaya v. New York City Board of Educ., 202 F.3d 636, 640 (2d Cir. 2000)( lateral job transfer that does not involve a demotion in form or substance cannot rise to the level of a materially adverse employment action); Trigg v. New York City Transit Authority, 2001 U.S. Dist. LEXIS 10825 (E.D.N.Y. 2001); Pellei v. International Planned Parenthood Fed., 1999 U.S. Dist. LEXIS 15338 at *33

(S.D.N.Y. 1999) (an adverse service rating alone does not constitute an adverse employment action).

In the present case, Bishop received four written warnings between June 1998 and June 15, 2000. A written warning is the lowest level of discipline and in this case did not result in an tangible job loss. Bishop was never demoted, suspended, terminated or denied any benefits. (Facts, ¶ 52). By her own admission, she continued to work "lots of overtime," sometimes averaging over 40 hours of overtime a week. (Facts, ¶ 52). Often instead of initiating formal discipline, Bishop was simply counseled about her conduct and received no discipline when she failed to perform her job correctly or made a medical mistake (Facts, ¶¶ 24-26, 28, 34, 40, 44, 46).

Similarly, the plaintiff cannot prove any damages in this case. She admits that she worked large amounts of overtime. She was never suspended, demoted, or had her pay reduced in any way. She continued to be paid $27 an hour plus overtime, that often exceeded 80 hours a week. She was one of the highest paid people at CVH. (Facts, ¶ 52). She will not be able to prove any substantive damages.

**THE DECISION BY PLAINTIFF'S ESTATE TO CONTINUE THIS LAWSUIT IS FRIVOLOUS**

After the plaintiff's untimely death in September of 2002, defense counsel asked plaintiff's counsel to reconsider the case in light of the fact that Ms. Bishop's deposition could not be finished, she is not available to testify at trial and there are no apparent witnesses to corroborate her allegations. Other than reiterating the plaintiff's conclusory allegations, the plaintiff cannot prove the necessary elements or pretext or actual damages. Plaintiff conducted no discovery, has designated no expert witnesses, nor has she produced any medical or financial records to prove any damages in response to

summary judgment . Instead, at the insistence of the plaintiff's representative, plaintiff's counsel has put together a response to summary judgment that cannot begin to prove a prima facie case. Critical elements CANNOT be proved. For instance, without Bishop's testimony, how will she prove up any damages? How will she refute or prove that the testimony of the defendants is false? How will Bishop prove that she suffered an adverse employment action in light of the case law clearly holding that written warnings without some tangible job loss do not constitute an adverse employment action. How will Bishop demonstrate what other employees were similarly situated to her and how they were allegedly treated differently than her? Sufficient evidence to prove these elements are not included within the plaintiff's submission in resistance to summary judgment.[3]

This matter should have been voluntarily dismissed. Instead, the plaintiff's representative has forced the defendants to incur expenses and time that was unnecessary pursuing this frivolous action.

## CONCLUSION

For all of the reasons set forth in their memorandum in support of summary judgment and this reply, the defendants request that the court grant summary judgment to the defendant and award the defendant their attorney fees incurred herein.

---

[3] Plaintiff's allegations that another nurse who missed bed checks and was not disciplined is unsubstantiated because Bishop cannot establish that she and the other nurse were similarly situated. The plaintiff's receipt of a written warning occurred on the second occasion when she failed to conduct required bed checks. On the first such occasion she was simply counseled. (Facts, ¶'s 44, 48).

DEFENDANTS,

RICHARD BLUMENTHAL
ATTORNEY GENERAL

BY:________________________

Joseph A. Jordano
Assistant Attorney General
Juris No. ct21487
55 Elm Street, P.O. Box 120
Hartford, CT 06141-0120
Tel: (860) 808-5340
Fax: (860) 808-5383
E-mail:
Joseph.Jordano@po.state.ct.us

**CERTIFICATION**

I hereby certify that on this 12th day of November, 2003, a true and accurate copy of the foregoing was mailed, United States mail, first class postage prepaid, to:

Dawne Westbrook, Esq.
P.O. Box 2502
Middletown, CT 06457

________________________
Joseph A. Jordano
Assistant Attorney General