UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

ALLISON BISHOP, as executrix  :
of the Estate of Thelma       :
Bishop,                       :
  Plaintiff,                  :
                              :
v.                            :  Civil No. 3:01CV1140(AVC)
                              :
STATE OF CONNECTICUT - WHITING :
FORENSIC DIVISION OF THE      :
CONNECTICUT VALLEY            :
HOSPITAL, ET AL,              :
  Defendants.                 :

## RULING ON THE DEFENDANTS' MOTION TO DISMISS AND MOTION FOR SUMMARY JUDGMENT

This is an action for damages and injunctive relief arising out of the defendants' alleged unlawful employment discrimination against Thelma Bishop on the basis of her race, ethnicity and national origin.  It is brought by Allison Bishop, the executrix of the estate of Thelma Bishop, pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, as amended by the Civil Rights Act of 1991 ("Title VII"), 42 U.S.C. § 1981, the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, 42 U.S.C. § 1983, the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, the Connecticut Fair Employment Practices Act ("CFEPA"), Conn. Gen. Stat. 42a-60, the Connecticut Constitution, and common law tenets concerning intentional infliction of emotional distress.

The individual defendants, Carol Caplan, Pamela Morrison, David Lewis and Debbie Roth, have filed the within motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(5) (document no. 26),

contending that the complaint should be dismissed because service of process was insufficient.[1]  The individual defendants, as well as the State of Connecticut, Whiting Forensic Division of the Connecticut Valley Hospital ("Whiting"), have also filed the within motion for summary judgment (document no. 26) pursuant to Fed. R. Civ. P. 56, contending that the plaintiff has failed to raise an issue of material fact and therefore that they are entitled to judgment as a matter of law.

The issues presented are: (1) did the plaintiff properly serve the individual defendants; (2) whether the plaintiff has raised an issue of fact with regard to the Title VII disparate treatment claim; (3) whether the plaintiff has raised an issue of fact with regard to the Title VII hostile work environment claim; (4) whether the plaintiff has raised an issue of fact with regard to the Title VII retaliation claim; (5) whether the plaintiff has raised an issue of fact with regard to her cause of action brought pursuant to the Equal Protection clause of the Fourteenth Amendment to the United States Constitution; (6) whether the plaintiff's failure to serve her complaint within ninety days of receiving a release of jurisdiction from the Connecticut Commission on Human Rights and Opportunities ("CHRO") bars the

---

[1]The defendants do not, in fact, entitle their motion a "motion to dismiss."  Nevertheless, with regard to the insufficiency of process issue, the defendants clearly invoke the Fed. R. Civ. P. 12(b)(5), a standard for a motion to dismiss.  Therefore, with respect to that claim, the court construes the motion as a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(5).

cause of action brought pursuant to the CFEPA; and (7) whether the Eleventh Amendment bars the cause of action brought pursuant to the ADEA.

For the reasons that hereinafter follow, the court concludes that: (1) the plaintiff did not properly serve the individual defendants; (2) the plaintiff has raised an issue of fact with regard to the Title VII disparate treatment claim; (3) the plaintiff has raised an issue of fact with regard to the Title VII hostile work environment claim; (4) the plaintiff has not raised an issue of fact with regard to the Title VII retaliation claim; (5) the plaintiff has raised an issue of fact with regard to her equal protection cause of action; (6) the failure to serve the complaint within ninety days of receiving a release of jurisdiction from the CHRO bars the cause of action brought pursuant to the CFEPA; and (7) the cause of action brought pursuant to the ADEA is barred by the Eleventh Amendment.

Therefore, the motion to dismiss is GRANTED, and the motion for summary judgment is GRANTED in part and DENIED in part.

### FACTS

Examination of the complaint, Local Rule 56(a) statements,[2]

---

[2]In the Local Rule 56(a)(2) document submitted by the plaintiff, the plaintiff has denied various facts asserted by the defendants in their 56(a)(1) statement. The plaintiff, however, has failed to provide any evidentiary support for some the denials. Such evidentiary support is required under Conn. L. R. Civ. P. 56(a)(2). Thus, where the plaintiff has failed to provide such evidentiary support, the court disregards the denials and assumes the defendants' facts admitted. See Conn. Local Rule 56(a)(1).

exhibits, motion for summary judgment, and the responses thereto reveals the following undisputed, material facts:  At all relevant times, the state of Connecticut employed Thelma Bishop, a black female of Guyanan ancestry and national origin, as a registered nurse.  At all relevant times, the state of Connecticut employed Carol Caplan, a defendant, as a Nurse Clinical Specialist and Unit Director at the Whiting Forensic Division of Connecticut Valley Hospital ("Whiting").  At all relevant times, the state of Connecticut employed Pamela Morrison, a defendant, as the Chief of Human Resource Operations at the Connecticut Valley Hospital ("CVH").  Morrison's responsibilities included: (1) investigating reports of work rule violations, sexual harassment complaints, discrimination complaints and work place violence; and (2) on behalf of CVH management, handling union grievances filed by employees.  At all relevant times, the state of Connecticut employed David Lewis, a defendant, as a nurse supervisor at Whiting.  At all relevant times, the state of Connecticut employed Debbie Roth, a defendant, as a nurse supervisor at Whiting.

In the early part of 1996, Thelma Bishop took a forensic nursing position at Whiting.  Whiting is a maximum security psychiatric hospital that provides services to highly volatile and extremely dangerous psychiatric patients.  Many of the patients at Whiting have been convicted of such violent crimes as rape, child molestation, and murder.

4

Upon her arrival at Whiting, Bishop began a "four month working test" and orientation period.  On or about February 28, 1996, Bishop's supervisor authored a performance evaluation wherein the supervisor stated that Bishop's overall work performance was unsatisfactory.  In March 1996, Bishop's supervisors extended Bishop's working test period until July 14, 1996.  After completing the working test period, Bishop's work performance reached acceptable levels.

Following the completion of her working test period, Bishop's supervisors assigned her to unit 5 at Whiting.  IN August 1996, while working in unit 5, Bishop administered a potentially lethal dose of medication to a patient.  According to the defendants, the patient had been taken off of that medication for various medical reasons.  The attending physician considered Bishop's act a serious medical error and requested that she no longer treat his patients.  Bishop maintains that she had administered this medication to the patient in the past and that the attending physician had never informed her of any change, and that no such notation was made in the patient's chart.

As a result of this incident, the defendants sent Bishop "for several months of retraining that was designed to bring her knowledge of nursing practices up to the required standards."  Although the plaintiff does not dispute that the defendants sent Bishop for retraining, the plaintiff contends that the retraining was not "to bring [Bishop's] nursing practices up to standards."

5

On August 15, 1996, the defendants gave Thelma Bishop the
National League of Nursing examination for basic proficiency in
medication administration; Bishop answered 48 per-cent of the
questions correctly.  The defendants also gave Bishop a separate
test for psychiatric medication, wherein she answered 63 per-cent
of the questions correctly.

Whiting has a dress code which provides, in part, that
nurses are not permitted to wear "sexually provocative clothing."
The reason for this aspect of the dress code is that many of the
Whiting patients are "habitual sex offenders . . . with poor
impulse control problems" who "can be easily sexually aroused or
misinterpret the actions of female staff members [as] . . .
sexually provocative."  The dress code also prohibits loose
jewelry and scarves because they can easily be grabbed by
patients and thereby pose a safety hazard.  During 1996, the
defendants claim that "Bishop routinely came to work wearing
extremely tight, sexually provocative clothes that accentuated
her chest."  The defendants also contend that during this same
time period Bishop wore scarfs and loose jewelry.  Whiting
personnel spoke to Bishop regarding her provocative dress and
loose jewelry, which Whiting personnel believed could pose a
safety hazard.  Bishop responded that "I'm from Guyana and that
is how I dress."

Subsequent to this conversation, the defendants required
Bishop to wear a lab coat while on duty.  According to the

6

defendants, this was "to accommodate her individuality."
According to Bishop, she had no choice in the matter and the
defendants did not require any other nurse to wear such a coat.

Whiting has a written policy regarding the security of
controlled substances and medications.  On two occasions in 1996,
Thelma Bishop violated that policy.  First, Bishop left her
medication control keys in a desk drawer in the medication room.
Second, she gave her keys to an unauthorized individual.  The
defendants did not discipline Bishop for either of these
incidents.

In 1997, Bishop reported that she had been assaulted by a
co-worker during her shift at Whiting.  Specifically, Bishop
claimed that she had been "body slammed" against a wall.
Subsequent investigations by the CVH human resources department
and the Whiting police department failed to substantiate Bishop's
claim.  Also in 1997, Bishop's supervisors counseled her
regarding a complaint that she had verbally abused a patient.

In March 1998, Caplan informed Thelma Bishop that her skills
were below the expected standard of care because she was not
familiar with the patients' care or treatment plans.  Caplan told
Bishop to prepare a written plan to correct her failings.  On
March 16, 1998, Thelma Bishop informed Caplan that she was too
busy to prepare the plan.  Caplan gave her extra time to reply.

On March 18, 1998, Caplan wrote a memorandum to Bishop
regarding her work performance.  In that memorandum, Caplan

7

stated that Bishop's nursing skills were lacking. On June 25, 1998, Caplan gave Bishop a written warning indicating that her work performance was still considered deficient. In that written warning, Caplan cited Bishop's rude demeanor, poor interaction with the patients, and continued treatment deficiencies. Bishop subsequently brought a union grievance for the June 25, 1998, warning; that grievance was denied.

In April 1999, Bishop's supervisor counseled Bishop regarding her failure to complete an assignment sheet that resulted in the "failure of staff to conduct security bed checks." According to the defendants, Bishop received no discipline for this failure. The plaintiff, however, relying on Bishop's deposition testimony, maintains that "oral counseling is a form of discipline."

On October 28, 1999, Morrison, the head of the human resources department at CVH, gave Bishop a written warning based on the fact that Bishop had been disrespectful and inappropriate in her treatment of a co-worker. Specifically, the co-worker claimed that Bishop had been verbally disrespectful and abusive and that some of Bishop's statements were threatening. Two other workers corroborated the claims. Bishop grieved the written warning, and the grievance was denied.

In March 2000, Bishop's supervisor counseled her for failing to prepare a medication administration record. In May 2000, Thelma Bishop had a meeting with various Whiting personnel. The

parties dispute who was at the meeting and what was discussed.
According to the defendants, Whiting Assistant Director Denise
Ribble, Caplan and a union delegate attended the meeting.
Further, according to the defendants, they told Thelma Bishop
that "[s]everal employees had reported that Bishop was harassing
them by threatening to sue for testifying against her at her
union grievance regarding the discipline imposed for her verbal
abuse of staff employees on October 29, 1999."  The defendants
also maintain that Thelma Bishop was "informed that she had the
right to pursue her legal claims outside the workplace, but she
was not to make such comments during work time" because it was
disruptive.

        The plaintiff maintains that Caplan, Morrison and one Dennis
Wimble were present at the meeting.  The plaintiff also maintains
that upon her arrival, "Caplan immediately demanded to know if
[Bishop] was planning on commencing a lawsuit against [her]
employers and individuals at [her] workplace."  Thelma Bishop
"informed her that [she was] . . . suing based upon the treatment
. . . [that she had] received."

        On June 15, 2000, David Lewis, a Whiting nursing supervisor,
gave Bishop a written warning for her failure to complete an
assignment and for failing to ensure that the required bed checks
were conducted.  According to Lewis's written warning, this was
"a very serious lapse in our security procedures."

        During the course of her employment at Whiting, Thelma

Bishop was never suspended, demoted, or terminated. Additionally, she was never denied overtime. All of the union grievances that Bishop filed were denied. Nevertheless, the plaintiff maintains that, based on various statements from co-workers, from the time she started at Whiting the defendants were attempting to get her fired. More specifically, the co-workers allegedly informed Bishop that the defendants had informed Bishop's supervisors - before she arrived at Whiting - to "write everything down that she says and we will get rid of her."

On August 28, 2000, Bishop filed an "affidavit of illegal discriminatory practice" with the Connecticut Commission on Human Rights and Opportunities ("CHRO") naming Whiting as the respondent. In her affidavit, Bishop claims that she had to work in a hostile and dangerous work environment and that she was subject to unfair discipline that was more harsh than the discipline given to similarly situated individuals.

On July 22, 2002, Bishop filed an additional "affidavit of illegal discriminatory practice" with the CHRO. In that affidavit Bishop alleged that on July 10, 2002, she asked a co-worker, one Ms. Statchen, to help her perform a work task. Statchen allegedly told Bishop that "you know you only have a [nursing] license because you are black, you are old, why don't you retire and be done with it." Bishop attempted to call a supervisor. Statchen took the phone from her hand and blocked Bishop's exit. Bishop was eventually able to leave and she

reported the incident.  When the supervisor arrived, Statchen continued to make disparaging remarks in the presence of the supervisor.  Nevertheless, according to Bishop, the supervisor did nothing.  According to the defendants, an investigation of the incident did not substantiate Bishop's allegations.

On June 18, 2001, Thelma Bishop filed the instant lawsuit. According to the return of service signed by counsel for the plaintiff, a Marshall served the summons and complaints for the individual defendants upon one James Cassidy.  Cassidy is the director of Whiting.

On September 1, 2002, Thelma Bishop died.  On January 14, 2003, the defendants filed a "suggestion of death" pursuant to Federal Rule of Civil Procedure 25(a)(1).[3]  On July 8, 2003, Alison Bishop, the executrix of Bishop's estate, was substituted as plaintiff.  On August 29, 2003, the defendants filed the within motion to dismiss and motion for summary judgment.

---

[3]Fed. R. Civ. P. 25(a)(1) provides that: "If a party dies and the claim is not thereby extinguished, the court may order substitution of the proper parties. The motion for substitution may be made by any party or by the successors or representatives of the deceased party and, together with the notice of hearing, shall be served on the parties as provided in Rule 5 and upon persons not parties in the manner provided in Rule 4 for the service of a summons, and may be served in any judicial district. Unless the motion for substitution is made not later than 90 days after the death is suggested upon the record by service of a statement of the fact of the death as provided herein for the service of the motion, the action shall be dismissed as to the deceased party."

**STANDARD:**

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(5) must be granted if the plaintiff fails to serve a copy of the summons and complaint on the defendants pursuant to Rule 4 of the Federal Rules of Civil Procedure. See, e.g., Schaeffer v. Village of Ossining, 58 F.3d 48, 49-50 (2d Cir. 1995). Once validity of service has been challenged, it becomes the plaintiff's burden to prove that service of process was adequate. See, e.g., Cole v. Aetna Life & Cas., 70 F. Supp. 2d 106, 109 (D. Conn. 1999); Three Crown Ltd. Partnership v. Caxton Corp., 817 F. Supp. 1033 (S.D.N.Y.1993); Lee v. Carlson, 645 F. Supp. 1430, 1432 (S.D.N.Y.1986).

On a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute, and that it is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). A dispute regarding a material fact is genuine "'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Aldrich v. Randolph Cent. Sch. Dist., 963 F.2d 520, 523 (2d Cir.), cert. denied, 506 U.S. 965 (1992) (quoting Anderson, 477 U.S. at 248). The court resolves "all ambiguities and draw[s] all inferences in favor of the nonmoving party in order to determine how a reasonable jury would decide." Aldrich, 963 F.2d at 523. Thus, "[o]nly when reasonable minds could not differ as

12

to the import of the evidence is summary judgment proper."

Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir.), cert. denied, 502 U.S. 849 (1991).

### DISCUSSION:

1.  Motion to Dismiss: Insufficient Service of Process

The defendants first contend that the complaint against the individual defendants should be dismissed because they were not properly served.  Specifically, the defendants contend that "the summons and complaint were not properly served on [them]" because they were not personally delivered to the individual defendants or delivered to their homes as required under the Federal Rules of Civil Procedure and the relevant Connecticut statute.

Bishop responds that the defendants have "failed to carry their burden of proof to establish lack of service." Specifically, Bishop contends that the defendants "did not file a motion to dismiss and at no time other than the present motion explained the reasons for the claim of lack of service of process."

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(5) must be granted if the plaintiff fails to serve a copy of the summons and complaint on the defendants pursuant to Rule 4 of the Federal Rules of Civil Procedure.  See, e.g., Schaeffer v. Village of Ossining, 58 F.3d 48, 49-50 (2d Cir. 1995).  Federal Rule of Civil Procedure 4(e) provides that:

. . . service upon an individual from whom a waiver has not

13

been obtained and filed, . . . may be effected in any judicial district of the United States: (1) pursuant to the law of the state in which the district court is located, or in which service is effected, for the service of a summons upon the defendant in an action brought in the courts of general jurisdiction of the State; or (2) by delivering a copy of the summons and of the complaint to the individual personally or by leaving copies thereof at the individual's dwelling house or usual place of abode with some person of suitable age and discretion then residing therein or by delivering a copy of the summons and of the complaint to an agent authorized by appointment or by law to receive service of process.

Under Connecticut law, service of a complaint is made upon an individual "by leaving a true and attested copy of it, including the declaration or complaint, with the defendant, or at his usual place of abode, in this state." Conn. Gen. Stat. § 52-57(a). A claim of insufficiency of service of process may be waived if not promptly raised through a Fed. R. Civ. P. 12(b) motion or in a responsive pleading, i.e., an answer. See Fed. R. Civ. P. 12(h)(1); see also Santos v. State Farm Fire and Casualty Co., 902 F.2d 1092, 1095 (2d Cir.1990).

In Schaeffer v. Village of Ossining, 58 F.3d 48 (2d Cir. 1995), the Second Circuit held that failure to serve process on a person authorized to receive service required dismissal under rule 12(b)(5). In Schaeffer, the plaintiff had brought suit against a village. Under the relevant New York law, service could only be accomplished by "delivering a copy of the summons and complaint to the 'mayor, clerk, or any trustee." Schaeffer v. Village of Ossining, 58 F.3d 48, 49 (2d Cir. 1995) (quoting New York law). The plaintiff in Schaeffer, however, did not

14

deliver a copy of the summons and complaint to any of these individuals.  Schaeffer v. Village of Ossining, 58 F.3d 48, 49 (2d Cir. 1995).  The district court granted the defendant's motion to dismiss pursuant to rule 12(b)(5) because the plaintiff had failed to comply with the applicable New York statute, and the Second Circuit affirmed.

Applying these principles, the court concludes that the individual defendants' motion to dismiss should be granted.  It is undisputed that the plaintiff did not receive a waiver of process from the individual defendants.  It is also undisputed that the summonses were not delivered to the individual defendants' homes.  Nor were the individual summonses and complaints given to the individual defendants personally.  Rather, they were hand delivered to the director of Whiting, one James Cassidy.  The relevant law requires, however, that the service be made upon the individual personally, or at their abode.  See Conn. Gen. Stat. § 52-57(a); Fed. R. Civ. P. 4.  Additionally, the individual defendants assert, and the plaintiff does not dispute, that Cassidy was not authorized to receive service on their behalf.  Thus, the plaintiff did not properly serve the individual defendants.

Further, the individual defendants raised the defense of insufficiency of process in their answer.  The defendants therefore cannot be said to have waived the defense by failing to raise it in a previous filing with the court.  Also, although the

15

individual defendants waited approximately two years from the
filing of their answer to the filing of the instant motion to
raise the service issue for the court's determination, at least
four months of this time was lost while the court and the
defendants awaited the plaintiff's response to the defendants'
suggestion of death.

The plaintiff does not dispute the facts underlying the
individual defendants' claims regarding the insufficiency of
process. Rather, the plaintiff asserts that "the defendants did
not file a motion to dismiss and at no time other than the
present motion explained the reasons for the claim of lack of
service." The court is not persuaded. The defendants failure to
file an earlier motion to dismiss is not detrimental, provided
they raise the claim in their answer, see Fed. R. Civ. P.
12(h)(1), and, as previously indicated, the defendants raised the
defense in their answer. The fact that the defendants did not
explain the reasons for their claim until now is similarly
unpersuasive inasmuch as the claim was raised in the answer and
the plaintiff was therefore on notice of the claim. The
plaintiff was subsequently free to pursue discovery with regard
thereto; indeed the plaintiff has had over two years to conduct
such discovery. Moreover, once validity of service has been
challenged, it becomes the plaintiff's burden to prove that
service of process was adequate. See, e.g., Cole v. Aetna Life &
Cas., 70 F. Supp. 2d 106, 109 (D. Conn. 1999). Accordingly, the

16

individual defendants' motion to dismiss on the ground of insufficiency of process is GRANTED.

2.   Title VII Causes of Action

The complaint in this matter alleges that, in violation of Title VII, Bishop was subjected to disparate treatment, that she was subjected to a hostile work environment, and that she was retaliated against for engaging in activity protected under Title VII.  The defendants contend that summary judgment is warranted with regard to each of these claims.

A.   Title VII Disparate Treatment Claim

The defendants present two arguments for why Bishop's disparate treatment cause of action should be dismissed.  First, the defendants contend that Bishop has failed to prove her prima facie case of discrimination.  Second, the defendants contend that, even if the plaintiff has established a prima facie case of discrimination, the plaintiff fails to refute the defendants' legitimate, non-discriminatory reason for its treatment of Bishop.

I.   Prima Facie Case

The defendants first contend that summary judgment should be granted with regard to Bishop's cause of action for disparate treatment because she cannot establish a prima facie claim of discrimination.  Specifically, the defendants contend that Bishop "cannot establish a prima facie case of discrimination because she suffered no adverse employment action."

17

Bishop responds that Thelma Bishop indeed suffered adverse employment action.  Specifically, she contends that Thelma Bishop was "continually harassed, having been disciplined a number of times; she was physically assaulted on more than one occasion; she was taunted for the way she spoke; she was interrogated about whether or not she would be filing a lawsuit; she was given unfavorable evaluations in retaliation for her complaint; she was forced to wear different clothing than other employees; and she was disciplined more harshly than other similarly situated employees."

A Title VII cause of action alleging employment discrimination proceeds under the burden shifting analysis of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct 1817, 36L.Ed.2d 668 (1973).  Under that framework, the plaintiff must first establish a prima facie case of discrimination.  This requires that "the claimant . . . show that: 1) [she] belonged to a protected class; 2) [she] was qualified for the position; 3) [she] suffered an adverse employment action; and 4) the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent."  Terry v. Ashcroft, 336 F.3d 128, 138 (2d Cir. 2003).  With regard to the prima facie case, the plaintiff's burden is de minimis.  See Dister v. Continental Group, Inc., 859 F.2d 1108, 1114 (2d Cir. 1988).

"To constitute an adverse employment action in violation of Title VII, a change in working conditions must be materially

adverse." Patrolmen's Benevolent Ass'n. of City of New York v. City of New York, 310 F.3d 43, 51 (2d Cir. 2002) (internal quotation marks omitted). "A materially adverse change must be more disruptive than a mere inconvenience or an alteration of job responsibilities and might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation." Patrolmen's Benevolent Ass'n. of City of New York v. City of New York, 310 F.3d 43, 51 (2d Cir. 2002) (internal citations and quotation marks omitted).

Applying these principles the court concludes that the plaintiff has raised an issue of fact that Bishop suffered an adverse employment action. Although the plaintiff's evidence is not overwhelming, the fact that the defendants required Bishop to wear a uniform different than other employees, namely, a lab coat, raises an issue of fact with regard to the claim that Bishop suffered an adverse employment action. In her deposition Bishop states that no other Whiting employees were required to wear a lab coat. Further, she states that, as a result of being required to wear the lab coat, she was ridiculed by both the patients and her co-workers. The court concludes that this evidence presents a question of fact as to whether the plaintiff

suffered an adverse employment action.[4]

## II.  Pretext

The defendants next contend that, even if the plaintiff can establish a prima facie case, the plaintiff cannot rebut the defendants' claim that any adverse employment action was a result of the fact that Bishop was "a marginal employee and that she had a difficult time maintaining her work performance." Specifically, the defendants contend that the plaintiff "has no evidence to refute the defendants' legitimate, non-discriminatory reasons for [the defendant's] actions to address Bishop's work performance and conduct."

The plaintiff responds that "similarly situated employees who were accused of the same thing as [Bishop] . . . were not disciplined."  The plaintiff further maintains that "no other nurse was required to wear a lab coat."

"Once a plaintiff has established a prima facie case, the burden shifts to the defendant, which is required to offer a legitimate, non-discriminatory rationale for its actions."  Terry v. Ashcroft, 336 F.3d 128, 138 (2d Cir. 2003).  "If the defendant proffers such a [legitimate, non-discriminatory] reason, the

---

[4]The defendants cites to a case from the Eleventh circuit indicating that poor evaluations standing alone do not Constitute an adverse employment action.  See Davis v. Town of Lake Park, 245 F.3d 132, 1241 (11th Cir. 2001).  The court's research has not uncovered any Second Circuit authority for this proposition.  Nevertheless, the court need not reach this issue inasmuch as the plaintiff has alleged more, namely the requirement that she wear a different uniform than that of her co-workers.

presumption of discrimination created by the prima facie case
drops out of the analysis, and the defendant will be entitled to
summary judgment . . . unless the plaintiff can point to evidence
that reasonably supports a finding of prohibited discrimination.
. . . The plaintiff must be afforded the opportunity to prove by
a preponderance of the evidence that the legitimate reasons
offered by the defendant were not its true reasons but were a
pretext for discrimination." Mario v. P & C Food Markets, Inc.,
313 F.3d 758, 767 (2d Cir. 2002) (internal quotation marks and
citations omitted).  In other words, "to defeat summary judgment
. . . the plaintiff's admissible evidence must show circumstances
that would be sufficient to permit a rational finder of fact to
infer that the defendant's employment decision was more likely
than not based in whole or in part on discrimination." Terry v.
Ashcroft, 336 F.3d 128, 138 (2d Cir. 2003) (internal quotation
marks omitted).

Applying these principles, the court concludes that the
plaintiff has raised a genuine issue of material fact that the
defendants' legitimate non-discriminatory reason is a pre-text
for discrimination.  The plaintiff has presented evidence that
other employees that committed similar infractions were not
subjected to similar treatment.  See Graham v. Long Island R.R.,
230 F.3d 34, 43 (2d Cir. 2000) (dissimilar treatment of similarly
situated employees can serve as evidence that an employer's
legitimate, non-discriminatory reason was a pretext for

discrimination).  More specifically, in her deposition the
plaintiff testified that: (1) unlike her, an employee who failed
to perform a bed check was not disciplined; and (2) unlike her,
an employee, one David Pavis, who made an error in administering
medication was not disciplined.[5]  The court therefore concludes
that the plaintiff has raised an issue of fact with regard to the
cause of action for disparate treatment.

B.    Hostile Work Environment

The defendants next contend that the plaintiff has failed to
raise an issue of fact with regard to the hostile work
environment claim.  Specifically, the defendants contend that
"the incidents [the plaintiff] complains about are discrete acts
that occurred months apart [and that] she was not disciplined for
every violation of the work rules."  Further, the defendants
contends that the "plaintiff does not allege any incidents
involving racial or ethnic slurs of any type, [and thus, the
plaintiff] . . . cannot prove that the alleged hostile work
environment was because of her race, ancestry or national
origin."

The plaintiff responds that Bishop was subjected to
assaults, ridicule, and harassing discipline.

_____

[5]The defendants, relying on Bishop's deposition testimony,
attempt to avoid the implications of this evidence by contending that
Pavis, like Bishop was tested because of his medication failure.  The
deposition testimony relied on by the defendants, however, is
equivocal at best.  Moreover, there is no evidence that Pavis, like
Bishop, was transferred for retraining because of his medication
error.

"[S]urviving summary judgment on a hostile environment claim under [Title VII] . . . requires evidence . . . that the environment was objectively hostile and abusive, that is, that it was permeated with discriminatory intimidation, ridicule, and insult, . . . that is sufficiently severe or pervasive to alter the conditions" of the plaintiff's employment.  Hayut v. State University of New York, 352 F.3d 733, 745 (2d Cir. 2003) (internal quotation marks omitted).  The determination of whether an environment was hostile, "entails examining the totality of the circumstances, including: the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with" the victim's employment.  Hayut v. State University of New York, 352 F.3d 733, 745 (2d Cir. 2003) (internal quotation marks omitted).  Moreover, a plaintiff raising a "Title VII hostile environment claim . . . must produce evidence that she was discriminated against because of her race . . . ."  Richardson v. New York State Dept. of Correctional Service, 180 F.3d 426, 440 (2d Cir. 1999).

In this case, there is a question of fact as to whether the plaintiff was subjected to a hostile work environment. Specifically, in her deposition, Bishop stated that fellow Whiting employees assaulted her on three separate occasions. Additionally, Bishop stated that more than once her supervisor ridiculed her because of her dialect and choice of words.  When

23

Bishop told the supervisor that she spoke as she did because she was from Guyana, the supervisor responded that "well, you're not in Guyana now."

With regard to the question of whether these actions were motivated by race, according to the plaintiff, one of the assaults occurred immediately after the person who assaulted her stated that the reason she had a nursing license was because she was black.  Also, Bishop's supervisor's ridicule continued after Bishop told her that she spoke as she did because of her national origin.  The court therefore concludes that there is a question of fact with regard to the plaintiff's hostile work environment claim.

C.    Title VII Retaliation Claim

The defendants also contend that the plaintiff has failed to raise an issue of fact with regard to the Title VII retaliation claim.  Specifically, the defendants contend that the plaintiff was not retaliated against, and any allegation of retaliation was justified by Bishop's poor work performance.

The plaintiff does not respond to the defendants' contentions.

In order to prevail on a Title VII retaliation claim, the plaintiff must first establish a prima facie case of retaliation by showing "(1) that she was engaged in protected activity by opposing a practice made unlawful by Title VII; (2) that the employer was aware of that activity; (3) that she suffered

24

adverse employment action; and (4) that there was a causal
connection between the protected activity and the adverse
action." <u>Galdieri-Ambrosini v. National Realty & Development
Corp.</u>, 136 F.3d 276, 292 (2d. Cir. 1998). "Upon such a showing,
the defendant must demonstrate legitimate reasons for its
actions, whereupon the plaintiff bears the burden of showing that
the defendant's explanations are pretext for the true
discriminatory motive." <u>Van Zant v. KLM Royal Dutch Airlines</u>, 80
F.3d 708, 714 (2d Cir. 1996).

Applying these principles, the court concludes that the
plaintiff has failed to raise a question of fact with regard to
the retaliation claim. Put simply, the plaintiff has failed to
identify any evidence whatsoever that indicates a casual
connection between her protected activities and retaliation by
the defendants. The motion for summary judgment with regard to
the Title VII retaliation cause of action is therefore GRANTED.

3. <u>Equal Protection Cause of Action:</u>

The defendants next contend that summary judgment should be
granted with regard to the plaintiff's equal protection cause of
action for two reasons. Specifically, the defendants first
contend that summary judgment is warranted because the plaintiff
has failed to adduce any evidence that Bishop was treated
differently than other Whiting employees. Second, the defendants
contend that summary judgment is warranted because the plaintiff
"cannot prove that the defendant's actions were intentionally

motivated to deprive the plaintiff of her constitutional rights or to maliciously injure her."

The plaintiff responds that Bishop was indeed subjected to selective treatment. Specifically, the plaintiff contends that "similarly situated employees . . . were accused of the same thing as [Bishop], but . . . were not disciplined."

A "selective-enforcement claim based on the Equal Protection Clause must allege that: (1) the person, compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." Giordano v. City of New York, 274 F.3d 740, 750-51 (2d Cir. 2001) (internal quotations omitted). The question of whether the plaintiff is similarly situated, generally presents a question of fact. See, e.g., Harlen Associates v. Incorporated Village of Mineola, 273 F.3d 494, 499 n.2 (2d Cir. 2001).

Applying these principles, the court concludes that there are material questions of fact with regard to the plaintiff's equal protection cause of action. First, as indicated above with regard to the Title VII cause of action, the plaintiff has adduced evidence that she was treated differently than others who had committed similar offense. More specifically according to Bishop's deposition testimony: (1) no other employee was forced

to wear a lab coat (2) Statchen, who like Bishop failed to perform a bed check, was not disciplined; (3) David Pavis, a Whiting employee, who, like Bishop, made an error in administering medication, was not disciplined.

With regard to the defendants' contention that the plaintiff "cannot prove that the defendants' actions were intentionally motivated to deprive the plaintiff of her constitutional rights or to maliciously injure her," it is well settled that an equal protection claim is not limited to only those two motivations. Rather, an equal protection cause of action may be based on an allegation that the disparate treatment was motivated by other specific impermissible considerations, including race. See, e.g., Grillo v. New York City Transit Authority, 291 F.3d 231, 234 (2d Cir. 2002). Further, inasmuch as the court has previously concluded that the plaintiff has raised an issue of fact that the defendants' acts were motivated by race with regard to the Title VII cause of action, the plaintiff has raised an issue of fact that the defendants' dissimilar treatment of the plaintiff was motivated by race. The motion for summary judgment with regard to the equal protection claim is therefore DENIED.[6]

---

[6]The defendants also contend that the doctrine of qualified immunity bars the equal protection causes of action asserted against the individual defendants. Inasmuch as the court has dismissed the complaint against the individual defendants on the grounds of insufficient service of process, the court need not reach this issue.

4.    The State Law Statutory Claims:

The defendants contend that the plaintiff's Connecticut statutory claims are time barred.  Specifically, the defendants maintain that the claims are "barred by the statute of limitations" insofar as the plaintiff failed to comply with the relevant statute and file suit "within 90 days of receiving a release of jurisdiction" from the CHRO.

The plaintiff provides a two line response, stating that "a release of jurisdiction is not applicable in federal court.  The plaintiff needed a right to sue letter form the U.S. Department of Justice."

The complaint in this matter asserts a CFEPA cause of action.  More specifically the plaintiff asserts a cause of action pursuant to Conn. Gen. Stat. §§ 46a-58(a), 46a-60(a)(1), 46a-60(a)(4), and 46a-60(a)(5).  A private right of action predicated on these statutes requires that the plaintiff receive a release of jurisdiction in accordance with Conn. Gen. Stat. § 46a-100.  See Brittell v. Department of Correction, 247 Conn. 148, 162 (1998 Conn.).  Private rights of actions brought pursuant Conn. Gen. Stat. § 46a-100, however, must be commenced within 90 days of receiving a release of jurisdiction.  See Conn. Gen. Stat. 46a-101(e) ("[a]ny action brought by the complainant in accordance with section 46a-100 shall be brought within ninety days of the receipt of the release from the commission").  Failure to bring suit within 90 days divests a court of subject

28

matter jurisdiction.  See, e.g., Shyrer v. Associated
Pulmonogists of Western Connecticut, No. 319434, 1996 WL 222364,
at *3 (Conn. Super. Ct. 1996).

Applying these principles, the court concludes that the
Connecticut statutory causes of action are time barred.  It is
undisputed that Bishop received a release of jurisdiction from
the CHRO on February 8, 2001.  This lawsuit was commenced on June
18, 2001, and, therefore, was commenced beyond the requisite 90
days.  The plaintiff's responds that no such release of
jurisdiction is required in federal court.  The plaintiff,
however, provides no authority for this contention.  Further, the
court's research has found no support for the plaintiff's
contention.  Therefore, the defendants' motion for summary
judgment with regard to the CFEPA cause of action is GRANTED.

5.    Age Discrimination Claim and Eleventh Amendment

The defendants next contend that the cause of action
premised on the Age Discrimination in Employment Act ("ADEA")
asserted against the state government is barred under the
Eleventh Amendment.  The plaintiff does not respond to this
argument.

In McGinty v. State of New York, 251 F.3d 84, 92 (2d Cir.
2001), the Second Circuit held that, pursuant to the Eleventh
Amendment, "while an aggrieved party can pursue avenues other
than the ADEA when faced with age discrimination, . . . it
clearly cannot mount an ADEA claim against a state without its

29

consent in federal court." <u>McGinty v. State of New York</u>, 251 F.3d 84, 92 (2d Cir. 2001) (internal citations omitted).  In this case, the plaintiff has made no claim that the state has consented to suit in federal court.  Indeed, the plaintiff has not responded to the defendants' Eleventh Amendment argument in any manner whatsoever.  The motion for summary judgment with regard to the plaintiff's ADEA cause of action is therefore GRANTED.[7]

---

[7]The defendants' final contention is that the causes of action for "monetary damages from the defendants in their *individual . . .capacities* [brought pursuant to] 42 U.S.C. § 1981 [are] barred because 42 U.S.C. § 1983 is the exclusive remedy for the alleged violations by state actors." (Emphasis added.)  Having already concluded that the causes of action asserted against the individual defendants are to be dismissed for insufficient service of process, the court need not reach this issue.

### CONCLUSION:

For the foregoing reasons, the motion for summary judgment (document no. 26) is GRANTED in part and DENIED in part.  The motion to dismiss is GRANTED.

It is so ordered this __31st__ day of March, 2004 at Hartford, Connecticut.

Alfred V. Covello
United States District Judge