UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ALLISON BISHOP | : | NO. 3:01CV1140(AVC) |
| as Executor of the Estate of | : | |
| Thelma Bishop | : | |
| | : | |
| *Plaintiff*, | : | |
| | : | |
| V. | : | |
| | : | |
| STATE OF CONNECTICUT, | : | |
| ET AL., | : | |
| | : | |
| *Defendants*. | : | APRIL 12, 2004 |

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR RECONSIDERATION

The defendant  DMHAS seeks reconsideration of the Court's March 31, 2004 ruling denying two parts of the defendant's motion for summary judgment. Specifically, the defendant requests that the court reconsider its ruling that the plaintiff has produced sufficient evidence on her claims of (1) disparate treatment under Title VII and (2) a hostile work environment under Title VII.

**THERE IS NO EVIDENCE THAT THE EMPLOYER'S LEGITIMATE NON-DISCRIMINATORY REASON FOR REQUIRING THE PLAINTIFF TO WEAR A LAB COAT WAS PRETEXTUAL**.

In its ruling on the plaintiff's disparate treatment claim, the court identifies as an adverse action that the plaintiff was required to wear a lab coat. However the plaintiff offered NO EVIDENCE to refuted the defendant's legitimate nondiscriminatory  reason that Bishop was required to wear the coat for her own safety because she continued to violate DMHAS dress code policies. The only evidence submitted by Bishop was her

own testimony that she was the only person required to wear the lab coat.  The court then confused the wearing of the lab coat with other complaints about Bishop's job performance.  (i.e. another nurse making a medical error).

Bishop has NO EVIDENCE to refute the sworn testimony of Pamela Morrison and L. Ann Traub,[1] that Bishop was counseled about complying with the DMHAS dress code.  Bishop herself admits in her deposition that she was told to wear the coat because as she puts it:

> Q:     And why were you told to wear it?
>
> A:     That say my waste, my bust?
>
> Q:     What did they say about that?
>
> A:     Don't ask me, sir, I don't know.

(Defendant's Ex. 1, p. 125:9-13).

Furthermore, the Court's reliance on the case of  Graham v. Long Island R.R., 230 F.3d 34, 43 (2d Cir. 2000) is misplaced. As the Second Circuit has noted,  the district court  must "carefully distinguish between evidence that allows for a reasonable inference of discrimination and evidence that gives rise to mere speculation and conjecture. . . Thus the question is whether the evidence can reasonably and logically give rise to of discrimination under all the circumstances." Bickerstaff v. Vassar College, 196 F.3d 435, 447 (2d Cir. 1999).

Recently in the case of Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133 (2000), the Supreme Court recognized that simply offering *some evidence* does not meet the burden of showing pretext. The court noted:

---

[1]  See the attached sworn statement of L. Traub that she counseled Bishop about her clothes that violated the dress code.

> For instance, an employer would be entitled to summary judgment as a matter of law if the record conclusively revealed some other, non-discriminatory reason for the employer's decision, **or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there is abundant and uncontroverted independent evidence that no discrimination has occurred.** (Emphasis added).

Id.  Accordingly, the plaintiff must offer more than her own conjecture and suspicions about whether others were required at some time to wear a lab coat. She has not refuted the defendant's legitimate nondiscriminatory reason that Bishop was allowed to wear the lab coat because she repeatedly came to work wearing clothes that violated the DMHAS dress code. In fact, Bishop offers no evidence to refute the testimony of Pamela Morrison that Bishop wore clothes that created a concern about her safety in the unit given the type of patients in Whiting. (Facts, ¶ 29-31).   Furthermore, there is no evidence or allegation that Bishop had to wear a lab coat because she made a medication error. The two matters are distinct.

Similar, the court's reference to Bishop's testimony that she was treated differently than a white male nurse for a medication error as potential evidence of pretext misses the points.  The retraining of Bishop because she failed the national medication and drug knowledge test is NOT an adverse action. This issue was addressed in the case of  Daulo v. Commonwealth Edison, et al., 938 F. Supp. 1388, 1398 (N.D. Ill. 1996). In Daulo, the plaintiff sued his employer alleging racial discrimination relating to his employment.  The adverse action taken in that case was a temporary transfer and retraining. Considering the plaintiff's prima facie burden, the district court held that "a temporary transfer and retraining" did not qualify as an adverse employment action.  The same reasoning can be said of the retraining and temporary assignment to day shift the Bishop received when she failed the medication competency test.  Bishop cannot refute

that she failed the test. (Defendants facts, ¶ 27, Plaintiff Rule 56(a) response, ¶ 27). Nor is there any evidence that Bishop lost her job, title, or wages.

More disturbing is the issue of how Bishop will prove a prima facie case. The defendant will object to her self-serving testimony that lacks foundation or is premised upon hearsay.

### THE PLAINTIFF'S HOSTILE ENVIRONMENT CLAIM ALSO LACK SUFFICIENT EVDIENCE TO SURVIVE SUMMARY JUDGMENT.

The court's ruling that the plaintiff has offered sufficient evidence on her hostile work environment claim is misplaced because the evidence used to create the issue of material fact is NOT admissible at trial. The court notes that Bishop offered evidence that DHMAS employee Statchen made a comment to her about her having a nursing license because she is black and then assaulted her. (Plaintiff's Rule 56(a) Response, Ex. C). However, Ex. C is an UNSIGNED, UN-NOTARIZED statement by Bishop. Her hearsay statement was not subject to cross examination. Therefore, it will not be admissible at trial and therefore, there will be NO EVIDENCE at trial of this alleged incident.[2] When asked in her deposition to state the incidents giving rise to her complaint, the only alleged assault that Bishop mentioned involved a different DMHAS employee that was investigated by the agency and found to be unsubstantiated. (Facts, ¶¶ 35-36).

---

[2] The alleged incident by Statchen is not only hearsay, but the plaintiff must offer foundation that Statchen's comment is imputable to the defendant agency. The mere fact that a co-employee makes a statement is not imputable to an employer unless the employee is acting as the employer's agent. Non-supervisory employees that have no direct involvement in the employment decision are not the employer's agent for the purposes of F.R.E. 801(d). See, Evans v. The Port Authority, 192 F. Supp. 2d 247, 262-63 (S.D.N.Y. 2002).

4

Then there is the issue that Bishop alleges that she was verbally criticized by co-workers or a supervisor. But there is NO EVIDENCE about when or how often this alleged verbal comments occurred. In the recent case of  Mormol v. Costco Wholesale Corp,  Docket No. 03-7409 (2d Cir. April 6, 2004) (slip opinion),  the plaintiff claimed that she was subjected to a sexual hostile work environment through repeated sexual advances and comments by her supervisor. Rejecting the plaintiff's claim, the Court reiterated that the "tangible employment action" requirement to impose liability upon an employer means direct *explicit* tangible change in the conditions of employment such as firing, failure to promote or reassignment to a significantly lesser job.  It is undisputed that the plaintiff suffered no economic loss.

In Mormol, the court went on to hold that there was no *implicit* change in the plaintiff conditions of employment in that case because the incidents were few and not pervasive.  While a single act may sometime be sufficient, Bishop does not indicate when or how often she was ridiculed. What we have in the plaintiff's submission is overly general assertions that cannot be supplemented by her a trial.

## PLAINTIFF CANNOT  PROVE A PRIMA FACIE CASE

The minimal evidence offered by the plaintiff cannot sustain a prima facie case absent additional testimony or exhibits that can rebut the defendant's evidence of a nondiscriminatory reasons for its action.  For instance, how will the plaintiff prove that the discipline she received for other incidents of misconduct were pre-textual? How will she prove damages when she admitted in her deposition that not only did she not lose any wages, but actually worked up to 40 hours a week of overtime.  The plaintiff conducted no discovery in this case. No expert was disclosed, so there will be no expert testimony

about emotional distress damages and no testimony from the plaintiff (who is dead) on this issue.

## CONCLUSION

For all of the above reasons, defendant DMHAS requests that Court reconsider those two portions of the summary judgment ruling in which the defendant's motion was denied.


DEFENDANT

RICHARD BLUMENTHAL
ATTORNEY GENERAL


BY:_____
    Joseph A. Jordano
    Assistant Attorney General
    Federal Bar # ct21487
    55 Elm Street, P.O. Box 120
    Hartford, CT 06141-0120
    Tel: (860) 808-5340
    Fax: (860) 808-5383
    E-mail:
    Joseph.Jordano@po.state.ct.us

**<u>CERTIFICATION</u>**

I hereby certify that on this 12th day of April, 2004, a true and accurate copy

of the foregoing was mailed, United States mail, first class postage prepaid, to:

Dawne Westbrook, Esq.
P.O. Box 2502
Middletown, CT 06457


_____
Joseph A. Jordano
Assistant Attorney General