. 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451
Supreme Court of the United States
HICKMAN
v.
TAYLOR et al.
No. 47.
Argued Nov. 13, 1946.
Decided Jan. 13, 1947.

Action by George E. Hickman, as administrator of the Estate of Norman E. Hickman, deceased, against John M. Taylor and George Anderson individually and trading as Taylor & Anderson Towing and Lighterage Company for death of plaintiff's decedent. There was a judgment of the Circuit Court of Appeals, 153 F.2d 212, reversing a judgment of the district court, 4 F.R.D. 479, adjudging the defendants and their attorney Samuel B. Fortenbaugh, Jr., guilty of contempt for refusal to answer an interrogatory, and the plaintiff brings certiorari.
Affirmed.
On Writ of Certiorari to the United States Circuit Court of Appeals for the Third Circuit.

West Headnotes

[1] KeyCite Notes 

170A Federal Civil Procedure
   170AX Depositions and Discovery
      170AX(A) In General
         170Ak1272 Scope
           170Ak1273 k. Adverse Party's Case, Matters Relating To. Most Cited Cases

Public policy supports reasonable and necessary inquiries into a person's files and records, including those resulting from the professional activities of an attorney, but the right to examination in a particular case must be carefully determined. Fed.Rules Civ.Proc. rules 26, 33, 34, 45, 28 U.S.C.A.

[2] KeyCite Notes

170A Federal Civil Procedure
   170AX Depositions and Discovery
      170AX(D) Written Interrogatories to Parties
         170AX(D)1 In General
           170Ak1474 Other Remedy, Availability or Prior Use of
              170Ak1476 k. Deposition. Most Cited Cases

170A Federal Civil Procedure
   170AX Depositions and Discovery
      170AX(D) Written Interrogatories to Parties
         170AX(D)1 In General
           170Ak1474 Other Remedy, Availability or Prior Use of
              170Ak1477 k. Documents, Discovery and Production Of. Most Cited Cases

Where plaintiff addressed simple interrogatories solely to adverse parties as contemplated by rule 33, which does not permit interrogatories to be addressed to counsel of adverse parties, and there were no interrogatories by way of deposition under rule 26 or motion for an order directing the production of documents under rule 34, which is limited to parties, plaintiff was proceeding primarily under rule 33. Fed.Rules Civ.Proc. rules 26, 33, 34, 28 U.S.C.A.

[3] KeyCite Notes 

⇨170A Federal Civil Procedure
　⇨170AX Depositions and Discovery
　　⇨170AX(D) Written Interrogatories to Parties
　　　⇨170AX(D)1 In General
　　　　⇨170Ak1474 Other Remedy, Availability or Prior Use of
　　　　　⇨170Ak1476 k. Deposition. Most Cited Cases

⇨170A Federal Civil Procedure
　⇨170AX Depositions and Discovery
　　⇨170AX(E) Discovery and Production of Documents and Other Tangible Things
　　　⇨170AX(E)1 In General
　　　　⇨170Ak1554 k. Other Remedy, Availability or Prior Use Of. Most Cited Cases

Memoranda or statements gathered by counsel for defendants after claim had arisen could not be obtained by plaintiff by means of interrogatories addressed to defendants under rule 33, nor by means of an order under rule 34, but the only recourse was to take the deposition of counsel under rule 26 and to serve a subpoena duces tecum on him in conformity with rule 45. Fed.Rules Civ.Proc. rules 26, 33, 34, 45, 28 U.S.C.A.

[4] KeyCite Notes 

⇨170B Federal Courts
　⇨170BVII Supreme Court
　　⇨170BVII(B) Review of Decisions of Courts of Appeals
　　　⇨170Bk452 k. Certiorari in General. Most Cited Cases
　　　　(Formerly 106k383(1))

Where both lower courts had passed on whether plaintiff was entitled to access to written and oral statements or reports gathered by defendants' counsel after claim had arisen, although plaintiff had not invoked the proper remedy, and the Supreme Court had granted certiorari because of the importance of the question and the divergent views of district courts, the procedural irregularity would be disregarded as immaterial. Federal Rules of Civil Procedure, rules 26, 33, 34, 45, 28 U.S.C.A. following section 723c.

[5] KeyCite Notes

⇨170A Federal Civil Procedure
　⇨170AX Depositions and Discovery
　　⇨170AX(A) In General
　　　⇨170Ak1264 k. Actions in Which Remedy Is Available. Most Cited Cases

Discovery is available in all types of cases at the behest of any party, individual or corporate. Fed.Rules Civ.Proc. rules 26, 33, 34, 45, 28 U.S.C.A.

[6] KeyCite Notes

 170A Federal Civil Procedure
  170AX Depositions and Discovery
   170AX(A) In General
    170Ak1261 k. In General. Most Cited Cases

The deposition-discovery rules must be broadly and liberally construed. Fed.Rules Civ.Proc. rules 26, 33, 34, 45, 28 U.S.C.A.

[7] KeyCite Notes

 170A Federal Civil Procedure
  170AX Depositions and Discovery
   170AX(A) In General
    170Ak1272 Scope
     170Ak1273 k. Adverse Party's Case, Matters Relating To. Most Cited Cases

Mutual knowledge of all relevant facts gathered by parties to litigation is essential, and where it is essential to the preparation of one's case either party may, in good faith, compel the other to disclose whatever relevant facts he has in his possession, if not otherwise privileged, without regard to the time-honored defense of "fishing expedition". Fed.Rules Civ.Proc. rules 26, 26(b), 30(b)(d), 31(d), 33, 34, 45, 28 U.S.C.A.

[8] KeyCite Notes

 170A Federal Civil Procedure
  170AX Depositions and Discovery
   170AX(A) In General
    170Ak1272 Scope
     170Ak1273 k. Adverse Party's Case, Matters Relating To. Most Cited Cases

Memoranda, statements or reports gathered or made by counsel for defendants after claim had arisen were not protected from discovery on the basis that they are privileged. Fed.Rules Civ.Proc. rules 26, 26(b), 30(b)(d), 31(d), 33, 34, 45, 28 U.S.C.A.

[9] KeyCite Notes

 170A Federal Civil Procedure
  170AX Depositions and Discovery
   170AX(A) In General
    170Ak1272 Scope
     170Ak1273 k. Adverse Party's Case, Matters Relating To. Most Cited Cases

Information which an attorney secures from a witness while acting for his client in anticipation of litigation is not privileged, and neither are memoranda, briefs,

communications or other writings prepared by counsel for his own use in prosecuting his client's case or writings which reflect attorney's mental impressions, conclusions, opinions or legal theories.

[10] KeyCite Notes

157 Evidence
   157II Presumptions
      157k60 k. Innocence; Legality. Most Cited Cases

The presumption is that answers to interrogatories were complete and that they were honestly made.

[11] KeyCite Notes

170A Federal Civil Procedure
   170AX Depositions and Discovery
      170AX(A) In General
         170Ak1271 k. Proceedings to Obtain. Most Cited Cases

170A Federal Civil Procedure
   170AX Depositions and Discovery
      170AX(A) In General
         170Ak1272 Scope
            170Ak1273 k. Adverse Party's Case, Matters Relating To. Most Cited Cases

Where all the details regarding accident involved had been fully covered by answers to thirty-eight interrogatories and plaintiff had access to the public testimony of witnesses taken by federal inspectors, as well as to the witnesses, and there was no showing that access to statements obtained from witnesses by counsel for defendants or to other memoranda, statements or reports of counsel was necessary, plaintiff was not entitled to access to such matters. Fed.Rules Civ.Proc. rules 26, 26(b), 30(b)(d), 31(d), 33, 34, 45, 28 U.S.C.A.

[12] KeyCite Notes

45 Attorney and Client
   45I The Office of Attorney
      45I(C) Discipline
         45k34 k. Tenure of Office in General. Most Cited Cases

170A Federal Civil Procedure
   170AX Depositions and Discovery
      170AX(A) In General
         170Ak1272 Scope
            170Ak1273 k. Adverse Party's Case, Matters Relating To. Most Cited Cases

A lawyer is an officer of the court, bound to work for the advancement of justice while faithfully protecting the rightful interests of his clients and entitled to freedom from unnecessary intrusion by opposing parties and their counsel. Fed.Rules Civ.Proc., rules 26, 26(b), 30(b)(d), 31(d), 33, 34, 45, 28 U.S.C.A.

[13] KeyCite Notes

🔑 170A Federal Civil Procedure
    🔑 170AX Depositions and Discovery
        🔑 170AX(A) In General
            🔑 170Ak1272 Scope
                🔑 170Ak1273 k. Adverse Party's Case, Matters Relating To. Most Cited Cases
                (Formerly 170Ak273)

One seeking to compel attorney of adverse party to disclose data collected in client's behalf has burden of establishing adequate reasons therefor. Fed.Rules Civ.Proc. rules 26, 26(b), 30(b)(d), 31(d), 33, 34, 45, 28 U.S.C.A.

[14] KeyCite Notes

🔑 170A Federal Civil Procedure
    🔑 170AX Depositions and Discovery
        🔑 170AX(A) In General
            🔑 170Ak1267 Discretion of Court
                🔑 170Ak1267.1 k. In General. Most Cited Cases
                (Formerly 170Ak1267)

Whether discovery of written statements secured from witnesses by counsel of adverse party should be allowed rests in discretion of trial judge upon a proper showing, but where there was no showing of necessity therefor there was no occasion for the exercise of discretion even though the statements were not privileged. Fed.Rules Civ.Proc. rules 26, 26(b), 30(b), (d), 31(d), 33, 34, 45, 28 U.S.C.A.

[15] KeyCite Notes

🔑 170A Federal Civil Procedure
    🔑 170AX Depositions and Discovery
        🔑 170AX(A) In General
            🔑 170Ak1272 Scope
                🔑 170Ak1272.1 k. In General. Most Cited Cases
                (Formerly 170Ak1272)

Plaintiff was not entitled to disclosure of oral statements made by witnesses to attorney for defendant after claim arose, in view of full answers to interrogatories covering all phases of accident involved and other sources of information available to plaintiff. Fed.Rules Civ.Proc. rules 26, 33, 34, 45, 28 U.S.C.A.

[16] KeyCite Notes

🔑 170A Federal Civil Procedure
    🔑 170AX Depositions and Discovery
        🔑 170AX(A) In General
            🔑 170Ak1272 Scope

170Ak1273 k. Adverse Party's Case, Matters Relating To. Most Cited Cases

Where numerous interrogatories covering all phases of accident involved had been fully answered by defendants and other sources of information were available, that oral statements obtained from witnesses by defendants' attorney would enable plaintiff's attorney to prepare for cross-examination of such witnesses was insufficient reason for compelling disclosure of such matters. Fed.Rules Civ.Proc. rules 26, 33, 34, 45, 28 U.S.C.A.

**387 Mr. *497 Abraham E. Freedman, of Philadelphia, Pa., for petitioner.
Messrs. William I. Radner, of Washington, D.C., and Samuel B. Fortenbaugh, Jr., of Philadelphia, Pa., for respondents.

Mr. Justice MURPHY delivered the opinion of the Court.

[1] This case presents an important problem under the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, as to the extent to which a party may inquire into oral and written statements of witnesses, or other information, secured by an adverse party's counsel in the course of preparation for possible litigation after a claim has arisen. Examination into a person's files and records, including those resulting from the professional activities of an attorney, must be judged with care. It is not without reason that various safeguards have been established to preclude unwarranted excursions into the privacy of a man's work. At the same time, public policy supports reasonable and necessary inquiries. Properly to balance these competing interests is a delicate and difficult task.

*498 On February 7, 1943, the tug 'J. M. Taylor' sank while engaged in helping to tow a car float of the Baltimore & Ohio Railroad across the Delaware River at Philadelphia. The accident was apparently unusual in nature, the cause of it still being unknown. Five of the nine crew members were drowned. Three days later the tug owners and the underwriters employed a law firm, of which respondent Fortenbaugh is a member, to defend them against potential suits by representatives of the deceased crew members and to sue the railroad for damages to the tug.

A public hearing was held on March 4, 1943, before the United States Steamboat Inspectors, at which the four survivors were examined. This testimony was recorded and made available to all interested parties. Shortly thereafter, Fortenbaugh privately interviewed the survivors and took statements from them with an eye toward the anticipated litigation; the survivors signed these statements on March 29. Fortenbaugh also interviewed other persons believed to have some information relating to the accident and in some cases he made memoranda of what they told him. At the time when Fortenbaugh secured the statements of the survivors, representatives of two of the deceased crew members had been in communication with him. Ultimately claims were presented by representatives of all five of the deceased; four of the claims, however, were settled without litigation. The fifth claimant, petitioner herein, brought suit in a federal court under the Jones Act on November 26, 1943, naming as defendants the two tug owners, individually and as partners, and the railroad.

One year later, petitioner filed 39 interrogatories directed to the tug owners. The 38th interrogatory read: 'State whether any statements of the members of the crews of the Tugs 'J. M. Taylor' and 'Philadelphia' or of any other vessel were taken in connection with the towing of the car float and the sinking of the Tug 'John M. Taylor'.*499 Attach hereto exact copies of all such statements if in writing, and if oral, set forth in detail the exact provisions of any such oral statements or reports.'

Supplemental interrogatories asked whether any oral or written statements, records, reports or other memoranda had been made **388 concerning any matter relative to the towing operation, the sinking of the tug, the salvaging and repair of the tug, and the death of the deceased. If the answer was in the affirmative, the tug owners were then

requested to set forth the nature of all such records, reports, statements or other memoranda.

The tug owners, through Fortenbaugh, answered all of the interrogatories except No. 38 and the supplemental ones just described. While admitting that statements of the survivors had been taken, they declined to summarize or set forth the contents. They did so on the ground that such requests called 'for privileged matter obtained in preparation for litigation' and constituted 'an attempt to obtain indirectly counsel's private files.' It was claimed that answering these requests 'would involve practically turning over not only the complete files, but also the telephone records and, almost, the thoughts of counsel.'

In connection with the hearing on these objections, Fortenbaugh made a written statement and gave an informal oral deposition explaining the circumstances under which he had taken the statements. But he was not expressly asked in the deposition to produce the statements. The District Court for the Eastern District of Pennsylvania, sitting en banc, held that the requested matters were not privileged. 4 F.R.D. 479. The court then decreed that the tug owners and Fortenbaugh, as counsel and agent for the tug owners forthwith 'Answer Plaintiff's 38th interrogatory and supplemental interrogatories; produce all written statements of witnesses obtained by Mr. Fortenbaugh, as counsel and agent for Defendants; *500 state in substance any fact concerning this case which Defendants learned through oral statements made by witnesses to Mr. Fortenbaugh whether or not included in his private memoranda and produce Mr. Fortenbaugh's memoranda containing statements of fact by witnesses or to submit these memoranda to the Court for determination of those portions which should be revealed to Plaintiff.' Upon their refusal, the court adjudged them in contempt and ordered them imprisoned until they complied.

The Third Circuit Court of Appeals, also sitting en banc, reversed the judgment of the District Court. 153 F.2d 212. It held that the information here sought was part of the 'work product of the lawyer' and hence privileged from discovery under the Federal Rules of Civil Procedure. The importance of the problem, which has engendered a great divergence of views among district courts, [FN1] led us to grant certiorari. 328 U.S. 876, 66 S.Ct. 1337.

FN1 See cases collected by Advisory Committee on Rules for Civil Procedure in its Report of Proposed Amendments (June, 1946), pp. 40--47; 5 F.R.D. 433, 457--460. See also 2 Moore's Federal Practice (1945 Cum.Supp.), s 26.12, pp. 155--159; Holtzoff, 'Instruments of Discovery under Federal Rules of Civil Procedure,' 41 Mich.L.Rev. 205, 210--212; Pike and Willis, 'Federal Discovery in Operation,' 7 Univ. of Chicago L.Rev. 297, 301--307.

The pre-trial deposition-discovery mechanism established by Rules 26 to 37 is one of the most significant innovations of the Federal Rules of Civil Procedure. Under the prior federal practice, the pre-trial functions of notice-giving issue-formulation and fact-revelation were performed primarily and inadequately by the pleadings. [FN2] Inquiry into the issues and the facts before trial was *501 narrowly confined and was often cumbersome in method. [FN3] The new rules, however, restrict the pleadings to the task of general notice-giving and invest the deposition-discovery process with a vital role in the preparation for trial. The various instruments of discovery now serve (1) as a device, along with the pre-trial hearing under Rule 16, to narrow **389 and clarify the basic issues between the parties, and (2) as a device for ascertaining the facts, or information as to the existence or whereabouts of facts, relative to those issues. Thus civil trials in the federal courts no longer need be carried on in the dark. The way is now clear, consistent with recognized privileges, for the parties to obtain the fullest possible knowledge of the issues and facts before trial. [FN4]

FN2 'The great weakness of pleading as a means for developing and presenting issues of fact for trial lay in its total lack of any means for testing the factual basis for the pleader's allegations and denials.' Sunderland, 'The Theory and Practice of Pre-Trial Procedure,' 36 Mich.L.Rev. 215, 216. See also Ragland, Discovery Before Trial (1932), ch. I.

FN3 2 Moore's Federal Practice (1938), s 26.02, pp. 2445, 2455.

FN4 Pike and Willis, 'The New Federal Deposition-Discovery Procedure,' 38 Col.L.Rev. 1179, 1436; Pike, 'The New Federal Deposition-Discovery Procedure and the Rules of Evidence,' 34 Ill.L.Rev. 1.

There is an initial question as to which of the deposition-discovery rules is involved in this case. Petitioner, in filing his interrogatories, thought that he was proceeding under Rule 33. That rule provides that a party may serve upon any adverse party written interrogatories to be answered by the party served. [FN5] The District Court proceeded *502 on the same assumption in its opinion, although its order to produce and its contempt order stated that both Rules 33 and 34 were involved. Rule 34 establishes a procedure whereby, upon motion of any party showing good cause therefor and upon notice to all other parties, the court may order any party to produce and permit the inspection and copying or photographing of any designated documents, etc., not privileged, which constitute or contain evidence material to any matter involved in the action and which are in his possession, custody or control. [FN6]

FN5 Rule 33 reads: 'Any party may serve upon any adverse party written interrogatories to be answered by the party served or, if the party served is a public or private corporation or a partnership or association, by any officer thereof competent to testify in its behalf. The interrogatories shall be answered separately and fully in writing under oath. The answers shall be signed by the person making them; and the party upon whom the interrogatories have been served shall serve a copy of the answers on the party submitting the interrogatories within 15 days after the delivery of the interrogatories, unless the court, on motion and notice
and for good cause shown, enlarges or shortens the time. Objections to any interrogatories may be presented to the court within 10 days after service thereof, with notice as in case of a motion; and answers shall be deferred until the objections are determined, which shall be at as early a time as is practicable. No party may, without leave of court, serve more than one set of interrogatories to be answered by the same party.'

FN6 Rule 34 provides: 'Upon motion of any party showing good cause therefor and upon notice to all other parties, the court in which an action is pending may (1) order any party to produce and permit the inspection and copying or photographing, by or on behalf of the moving party, of any designated documents, papers, books, accounts, letters, photographs, objects, or tangible things, not privileged, which constitute or contain evidence material to any matter involved in the action and which are in his possession, custody, or control; or (2) order any party to permit entry upon designated land or other property in his possession or control for the purpose of inspecting, measuring, surveying, or photographing the property or any designated relevant object or operation thereon. The order shall specify the time, place, and manner of making the inspection and taking the copies and photographs and may prescribe such terms and conditions as are just.'

The Circuit Court of Appeals, however, felt that Rule 26 was the crucial one. Petitioner, it said, was proceeding by interrogatories and, in connection with those interrogatories, wanted copies of memoranda and statements secured from witnesses. While the court believed that Rule 33 was involved, at least as to the defending tug owners, it stated that this rule could not be used as the basis for condemning Fortenbaugh's failure to disclose or produce *503 the memoranda and statements, since the rule applies only to interrogatories addressed to adverse parties, not to their agents or counsel. And Rule 34 was said to be inapplicable since petitioner was not trying to see an original document and to copy or photograph it, within the scope of that rule. The court then concluded that Rule 26 must be the one really involved. That provides that the testimony of any person, whether a party or not, may be **390 taken by any party by deposition upon oral examination or written interrogatories for the purpose of discovery or for use as evidence; and that the deponent may be examined regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether relating to the claim or defense of the examining party or of any other party, including the existence, description, nature, custody, condition and location of any books, documents or other tangible things. [FN7]

FN7 The relevant portions of Rule 26 provide as follows:

'(a) When Depositions May be Taken. By leave of court after jurisdiction has been obtained over any defendant or over property which is the subject of the action or without such leave after an answer has been served, the testimony of any person, whether a party or not, may be taken at the instance of any party by deposition upon oral examination or written interrogatories for the purpose of discovery or for use as evidence in the action or for both purposes. The attendance of witnesses may be compelled by the use of subpoena as provided in Rule 45. Depositions shall be taken only in accordance with these rules. The deposition of a person confined in prison may be taken only by leave of court on such terms as the court prescribes.

(b) Scope of Examination. Unless otherwise ordered by the court as provided by Rule 30(b) or (d), the deponent may be examined regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether relating to the claim or defense of the examining party or to the claim or defense of any other party, including the existence, description, nature, custody, condition and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of relevant facts.'

*504 [2] The matter is not without difficulty in light of the events that transpired below. We believe, however, that petitioner was proceeding primarily under Rule 33. He addressed simple interrogatories solely to the individual tug owners, the adverse parties, as contemplated by that rule. He did not, and could not under Rule 33, address such interrogatories to their counsel, Fortenbaugh. Nor did he direct these interrogatories either to the tug owners or to Fortenbaugh by way of deposition; Rule 26 thus could not come into operation. And it does not appear from the record that petitioner filed a motion under Rule 34 for a court order directing the producetion of the documents in question. Indeed, such an order could not have been entered as to Fortenbaugh since Rule 34, like Rule 33, is limited to parties to the proceeding, thereby excluding their counsel or agents.

[3] Thus to the extent that petitioner was seeking the production of the memoranda

and statements gathered by Fortenbaugh in the course of his activities as counsel, petitioner misconceived his remedy. Rule 33 did not permit him to obtain such memoranda and statements as dejuncts to the interrogatories addressed to the individual tug owners. A party clearly cannot refuse to answer interrogatories on the ground that the information sought is solely within the knowledge of his attorney. But that is not this case. Here production was sought of documents prepared by a party's attorney after the claim has arisen. Rule 33 does not make provision for such production, even when sought in connection with permissible interrogatories. Moreover, since petitioner was also foreclosed from securing them through an order under Rule 34, his only recourse was to take Fortenbaugh's deposition under Rule 26 and to attempt to force Fortenbaugh to produce the materials by use of a subpoena duces tecum in accordance with Rule 45. Holtzoff, 'Instruments of Discovery under the Federal Rules of Civil Procedure,' 41 *505 Mich.L.Rev. 205, 220. But despite petitioner's faulty choice of action, the District Court entered an order, apparently under Rule 34, commanding the tug owners and Fortenbaugh, as their agent and counsel, to produce the materials in question. Their refusal led to the anomalous result of holding the tug owners in contempt for failure to produce that which was in the possession of their counsel and of holding Fortenbaugh in contempt for failure to produce that which he could not be compelled **391 to produce under either Rule 33 or Rule 34.

[4]    But under the circumstances we deem it unnecessary and unwise to rest our decision upon this procedural irregularity, an irregularity which is not strongly urged upon us and which was disregarded in the two courts below. It matters little at this later stage whether Fortenbaugh fails to answer interrogatories filed under Rule 26 or under Rule 33 or whether he refuses to produce the memoranda and statements pursuant to a subpoena under Rule 45 or a court order under Rule 34. The deposition-discovery rules create integrated procedural devices. And the basic question at stake is whether any of those devices may be used to inquire into materials collected by an adverse party's counsel in the course of preparation for possible litigation. The fact that the petitioner may have used the wrong method does not destroy the main thrust of his attempt. Nor does it relieve us of the responsibility of dealing with the problem raised by that attempt. It would be inconsistent with the liberal atmosphere surrounding these rules to insist that petitioner now go through the empty formality of pursuing the right procedural device only to reestablish precisely the same basic problem now confronting us. We do not mean to say, however, that there may not be situations in which the failure to proceed in accordance with a specific rule would be important or decisive. But in the present circumstances, for the purposes of this decision, the procedural *506 irregularity is not material. Having noted the proper procedure, we may accordingly turn our attention to the substance of the underlying problem.

In urging that he has a right to inquire into the materials secured and prepared by Fortenbaugh, petitioner emphasizes that the deposition-discovery portions of the Federal Rules of Civil Procedure are designed to enable the parties to discover the true facts and to compel their disclosure wherever they may be found. It is said that inquiry may be made under these rules, epitomized by Rule 26, as to any relevant matter which is not privileged; and since the discovery provisions are to be applied as broadly and liberally as possible, the privilege limitation must be restricted to its narrowest bounds. On the premise that the attorney-client privilege is the one involved in this case, petitioner argues that it must be strictly confined to confidential communications made by a client to his attorney. And since the materials here in issue were secured by Fortenbaugh from third persons rather than from his clients, the tug owners, the conclusion is reached that these materials are proper subjects for discovery under Rule 26.

As additional support for this result, petitioner claims that to prohibit discovery under these circumstances would give a corporate defendant a tremendous advantage in a suit by an individual plaintiff. Thus in a suit by an injured employee against a railroad or in a suit by an insured person against an insurance company the corporate defendant could

pull a dark veil of secrecy over all the pertinent facts it can collect after the claim arises merely on the assertion that such facts were gathered by its large staff of attorneys and claim agents. At the same time, the individual plaintiff, who often has direct knowledge of the matter in issue and has no counsel until some time after his claim arises could be compelled to disclose all the intimate details of his case. By endowing with *507 immunity from disclosure all that a lawyer discovers in the course of his duties, it is said, the rights of individual litigants in such cases are drained of vitality and the lawsuit becomes more of a battle of deception than a search for truth.

[5]   But framing the problem in terms of assisting individual plaintiffs in their suits against corporate defendants is unsatisfactory. Discovery concededly may work to the disadvantage as well as to the advantage of individual plaintiffs. Discovery, in other words, is not a one-way proposition. It is available in all types of cases at the behest of any party, individual or corporate, plaintiff or defendant. The problem thus far transcends the situation **392 confronting this petitioner. And we must view that problem in light of the limitless situations where the particular kind of discovery sought by petitioner might be used.

[6]   [7]   We agree, of course, that the deposition-discovery rules are to be accorded a broad and liberal treatment. No longer can the time-honored cry of 'fishing expedition' serve to preclude a party from inquiring into the facts underlying his opponent's case. [FN8] Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation. To that end, either party may compel the other to disgorge whatever facts he has in his possession. The deposition-discovery procedure simply advances the stage at which the disclosure can be compelled from the time of trial to the period preceding it, thus reducing the possibility of surprise. But discovery, like all matters of procedure, has ultimate and necessary boundaries. As indicated by Rules 30(b) and (d) and 31(d), limitations inevitably arise when it can be shown *508 that the examination is being conducted in bad faith or in such a manner as to annoy, embarrass or oppress the person subject to the inquiry. And as Rule 26(b) provides, further limitations come into existence when the inquiry touches upon the irrelevant or encroaches upon the recognized domains of privilege.

FN8 'One of the chief arguments against the 'fishing expedition' objection is the idea that discovery is mutual--that while a party may have to disclose his case, he can at the same time tie his opponent down to a definite position.' Pike and Willis, 'Federal Discovery in Operation,' 7 Univ. of Chicago L.Rev. 297, 303.

[8]   [9]   We also agree that the memoranda, statements and mental impressions in issue in this case fall outside the scope of the attorney-client privilege and hence are not protected from discovery on that basis. It is unnecessary here to delineate the content and scope of that privilege as recognized in the federal courts. For present purposes, it suffices to note that the protective cloak of this privilege does not extend to information which an attorney secures from a witness while acting for his client in anticipation of litigation. Nor does this privilege concern the memoranda, briefs, communications and other writings prepared by counsel for his own use in prosecuting his client's case; and it is equally unrelated to writings which reflect an attorney's mental impressions, conclusions, opinions or legal theories.

[10]   [11]   But the impropriety of invoking that privilege does not provide an answer to the problem before us. Petitioner has made more than an ordinary request for relevant, non-privileged facts in the possession of his adversaries or their counsel. He

has sought discovery as of right of oral and written statements of witnesses whose identity is well known and whose availability to petitioner appears unimpaired. He has sought production of these matters after making the most searching inquiries of his opponents as to the circumstances surrounding the fatal accident, which inquiries were sworn to have been answered to the best of their information and belief. Interrogatories were directed toward all the events prior to, during and subsequent to the sinking of the tug. Full and honest answers to such broad inquiries would necessarily have included all *509 pertinent information gleaned by Fortenbaugh through his interviews with the witnesses. Petitioner makes no suggestion, and we cannot assume, that the tug owners or Fortenbaugh were incomplete or dishonest in the framing of their answers. In addition, petitioner was free to examine the public testimony of the witnesses taken before the United States Steamboat Inspectors. We are thus dealing with an attempt to secure the production of written statements and mental impressions contained in the files and the mind of the attorney Fortenbaugh without any showing of necessity or any indication or claim that denial of such production would unduly prejudice the preparation of petitioner's case or cause him any hardship or injustice. For aught that appears, the essence of what petitioner seeks either has been revealed to him already **393 through the interrogatories or is readily available to him direct from the witnesses for the asking. The District Court, after hearing objections to petitioner's request, commanded Fortenbaugh to produce all written statements of witnesses and to state in substance any facts learned through oral statements of witnesses to him. Fortenbaugh was to submit any memoranda he had made of the oral statements so that the court might determine what portions should be revealed to petitioner. All of this was ordered without any showing by petitioner, or any requirement that he make a proper showing, of the necessity for the production of any of this material or any demonstration that denial of production would cause hardship or injustice. The court simply ordered production on the theory that the facts sought were material and were not privileged as constituting attorney-client communications.

In our opinion, neither Rule 26 nor any other rule dealing with discovery contemplates production under such circumstances. That is not because the subject matter is privileged or irrelevant, as those concepts are used in these *510 rules. [FN9] Here is simply an attempt, without purported necessity or justification, to secure written statements, private memoranda and personal recollections prepared or formed by an adverse party's counsel in the course of his legal duties. As such, it falls outside the arena of discovery and contravenes the public policy underlying the orderly prosecution and defense of legal claims. Not even the most liberal of discovery theories can justify unwarranted inquiries into the files and the mental impressions of an attorney.

FN9 The English courts have developed the concept of privilege to include all documents prepared by or for counsel with a view to litigation. 'All documents which are called into existence for the purpose--but not necessarily the sole purpose--of assisting the deponent or his legal advisers in any actual or anticipated litigation are privileged from production. * * * Thus all proofs, briefs, draft pleadings, etc., are privileged; but not counsel's indorsement on the outside of his brief * * *, nor any deposition or notes of evidence given publicly in open Court. * * * So are all papers prepared by any agent of the party bona fide for the use of his solicitor for the purposes of the action, whether in fact so used or not. * * * Reports by a company's servant, if made in the ordinary course of routine, are not privileged, even though it is desirable that the solicitor should have them and they are subsequently sent to him; but if the solicitor has requested that such documents shall always be prepared for his use and this was one of the reasons why they were prepared, they need not by disclosed.' Odgers on Pleading and Practice (12th ed., 1939), p. 264.

See Order 31, rule 1, of the Rules of the Supreme Court, 1883, set forth in The Annual Practice, 1945, p. 519, and the discussion following that rule. For a compilation of the

English cases on the matter see 8 Wigmore on Evidence (3d ed., 1940), s 2319, pp. 618--622, notes.

[12] Historically, a lawyer is an officer of the court and is bound to work for the advancement of justice while faithfully protecting the rightful interests of his clients. In performing his various duties, however, it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel. *511 Proper preparation of a client's case demands that he assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference. That is the historical and the necessary way in which lawyers act within the framework of our system of jurisprudence to promote justice and to protect their clients' interests. This work is reflected, of course, in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways--aptly though roughly termed by the Circuit Court of Appeals in this case (153 F.2d 212, 223) as the 'Work product of the lawyer.' Were such materials open to opposing counsel on mere demand, much of what is now put down in writing would remain unwritten. An attorney's thoughts, heretofore inviolate, **394 would not be his own. Inefficiency, unfairness and sharp practices would inevitably develop in the giving of legal advice and in the preparation of cases for trial. The effect on the legal profession would be demoralizing. And the interests of the clients and the cause of justice would be poorly served.

[13] We do not mean to say that all written materials obtained or prepared by an adversary's counsel with an eye toward litigation are necessarily free from discovery in all cases. Where relevant and non-privileged facts remain hidden in an attorney's file and where production of those facts is essential to the preparation of one's case, discovery may properly be had. Such written statements and documents might, under certain circumstances, be admissible in evidence or give clues as to the existence or location of relevant facts. Or they might be useful for purposes of impeachment or corroboration. And production might be justified where the witnesses are no longer available or can be reached only with difficulty. Were production of written statements and documents to be precluded under *512 such circumstances, the liberal ideals of the deposition-discovery portions of the Federal Rules of Civil Procedure would be stripped of much of their meaning. But the general policy against invading the privacy of an attorney's course of preparation is so well recognized and so essential to an orderly working of our system of legal procedure that a burden rests on the one who would invade that privacy to establish adequate reasons to justify production through a subpoena or court order. That burden, we believe, is necessarily implicit in the rules as now constituted. [FN10]

FN10 Rule 34 is explicit in its requirements that a party show good cause before obtaining a court order directing another party to produce documents. See Report of Proposed Amendments by Advisory Committee on Rules for Civil Procedure (June, 1946); 5 F.R.D. 433.

[14] Rule 30(b), as presently written, gives the trial judge the requisite discretion to make a judgment as to whether discovery should be allowed as to written statements secured from witnesses. But in the instant case there was no room for that discretion to operate in favor of the petitioner. No attempt was made to establish any reason why

Fortenbaugh should be forced to produce the written statements. There was only a naked, general demand for these materials as of right and a finding by the District Court that no recognizable privilege was involved. That was insufficient to justify discovery under these circumstances and the court should have sustained the refusal of the tug owners and Fortenbaugh to produce.

[15] But as to oral statements made by witnesses to Fortenbaugh, whether presently in the form of his mental impressions or memoranda, we do not believe that any showing of necessity can be made under the circumstances of this case so as to justify production. Under ordinary conditions, forcing an attorney to repeat or write out all that witnesses have told him and to deliver the account *513 to his adversary gives rise to grave dangers of inaccuracy and untrustworthiness. No legitimate purpose is served by such production. The practice forces the attorney to testify as to what he remembers or what he saw fit to write down regarding witnesses' remarks. Such testimony could not qualify as evidence; and to use it for impeachment or corroborative purposes would make the attorney much less an officer of the court and much more an ordinary witness. The standards of the profession would thereby suffer.

[16] Denial of production of this nature does not mean that any material, non-privileged facts can be hidden from the petitioner in this case. He need not be unduly hindered in the preparation of his case, in the discovery of facts or in his anticipation of his opponents' position. Searching interrogatories directed to Fortenbaugh and the tug owners, production of written documents and statements upon a proper showing and direct interviews with the witnesses themselves all serve to reveal the facts in Fortenbaugh's possession to **395 the fullest possible extent consistent with public policy. Petitioner's counsel frankly admits that he wants the oral statements only to help prepare himself to examine witnesses and to make sure that he has overlooked nothing. That is insufficient under the circumstances to permit him an exception to the policy underlying the privacy of Fortenbaugh's professional activities. If there should be a rare situation justifying production of these matters, petitioner's case is not of that type. We fully appreciate the wide-spread controversy among the members of the legal profession over the problem raised by this case. [FN11] It is a problem that rests on what *514 has been one of the most hazy frontiers of the discovery process. But until some rule or statute definitely prescribes otherwise, we are not justified in permitting discovery in a situation of this nature as a matter of unqualified right. When Rule 26 and the other discovery rules were adopted, this Court and the members of the bar in general certainly did not believe or contemplate that all the files and mental processes of lawyers were thereby opened to the free scrutiny of their adversaries. And we refuse to interpret the rules at this time so as to reach so harsh and unwarranted a result.

FN11 See Report of Proposed Amendments by Advisory Committee on Rules for Civil Procedure (June, 1946), pp. 44--47; 5 F.R.D. 433, 459, 460; Discovery Procedure Symposium before the 1946 Conference of the Third
United States Circuit Court of Appeals, 5 F.R.D. 403; Armstrong, 'Report of the Advisory Committee on Federal Rules of Civil Procedure Recommending Amendments,' 5 F.R.D. 339, 353--357.

We therefore affirm the judgment of the Circuit Court of Appeals.
Affirmed.

Mr. Justice JACKSON, concurring.
The narrow question in this case concerns only one of thirty-nine interrogatories which defendants and their counsel refused to answer. As there was persistence in refusal after

the court ordered them to answer it, counsel and clients were committed to jail by the district court until they should purge themselves of contempt.

The interrogatory asked whether statements were taken from the crews of the tugs involved in the accident, or of any other vessel, and demanded 'Attach hereto exact copies of all such statements if in writing, and if oral, set forth in detail the exact provisions of any such oral statements or reports.' The question is simply whether such a demand is authorized by the rules relating to various aspects of 'discovery'.

The primary effect of the practice advocated here would be on the legal profession itself. But it too often is overlooked *515 that the lawyer and the law office are indispensable parts of our administration of justice. Law-abiding people can go nowhere else to learn the ever changing and constantly multiplying rules by which they must behave and to obtain redress for their wrongs. The welfare and tone of the legal profession is therefore of prime consequence to society, which would feel the consequences of such a practice as petitioner urges secondarily but certainly.

'Discovery' is one of the working tools of the legal profession. It traces back to the equity bill of discovery in English Chancery practice and seems to have had a forerunner in Continental practice. See Ragland, Discovery Before Trial (1932) 13-16. Since 1848 when the draftsmen of New York's Code of Procedure recognized the importance of a better system of discovery, the impetus to extend and expand discovery, as well as the opposition to it, has come from within the Bar itself. It happens in this case that it is the plaintiff's attorney who demands such unprecedented latitude of discovery and, strangely enough, amicus briefs in his support have been filed by several labor unions representing plaintiffs as a class. It is the history of the movement for broader discovery, however, that in actual experience the chief opposition to its extension has come from lawyers **396 who specialize in representing plaintiffs because defendants have made liberal use of it to force plaintiffs to disclose their cases in advance. See Report of the Commission on the Administration of Justice in New York State (1934) 330, 331; Ragland, Discovery Before Trial (1932) 35, 36. Discovery is a two-edged sword and we cannot decide this problem on any doctrine of extending help to one class of litigants.

It seems clear and long has been recognized that discovery should provide a party access to anything that is evidence in his case. Cf. Report of Commission on the Administration of Justice in New York State (1934) 41, 42. *516 It seems equally clear that discovery should not nullify the privilege of confidential communication between attorney and client. But these principles give us no real assistance here because what is being sought is neither evidence nor is it a privileged communication between attorney and client.

To consider first the most extreme aspect of the requirement in litigation here, we find it calls upon counsel, if he has had any conversations with any of the crews of the vessels in question or of any other, to 'set forth in detail the exact provision of any such oral statements or reports.' Thus the demand is not for the production of a transcript in existence but calls for the creation of a written statement not in being. But the statement by counsel of what a witness told him is not evidence when written plaintiff could not introduce it to prove his case. What, then, is the purpose sought to be served by demanding this of adverse counsel?

Counsel for the petitioner candidly said on argument that he wanted this information to help prepare himself to examine witnesses, to make sure he overlooked nothing. He bases his claim to it in his brief on the view that the Rules were to do away with the old situation where a law suit developed into 'a battle of wits between counsel.' But a common law trial is and always should be an adversary proceeding. Discovery was hardly intended to enable a learned profession to perform its functions either without wits or on wits borrowed from the adversary.

The real purpose and the probable effect of the practice ordered by the district court would be to put trials on a level even lower than a 'battle of wits.' I can conceive of no practice more demoralizing to the Bar than to require a lawyer to write out and deliver to his adversary an account of what witnesses have told him. Even if his recollection were perfect, the statement would be his language *517 permeated with his inferences. Every one who has tried it knows that it is almost impossible so fairly to record the expressions

and emphasis of a witness that when he testifies in the environment of the court and under the influence of the leading question there will not be departures in some respects. Whenever the testimony of the witness would differ from the 'exact' statement the lawyer had delivered, the lawyer's statement would be whipped out to impeach the witness. Counsel producing his adversary's 'inexact' statement could lose nothing by saying, 'Here is a contradiction, gentlemen of the jury. I do not know whether it is my adversary or his witness who is not telling the truth, but one is not.' Of course, if this practice were adopted, that scene would be repeated over and over again. The lawyer who delivers such statements often would find himself branded a deceiver afraid to take the stand to support his own version of the witness's conversation with him, or else he will have to go on the stand to defend his own credibility--perhaps against that of his chief witness, or possibly even his client.

Every lawyer dislikes to take the witness stand and will do so only for grave reasons. This is partly because it is not his role; he is almost invariably a poor witness. But he steps out of professional character to do it. He regrets it; the profession discourages it. But the practice advocated here is one which would force him to be a witness, not as to what he has seen or done but as to other witnesses' stories, and not because he wants to do so but in self-defense.

And what is the lawyer to do who has interviewed one whom he believes to be a **397 biased, lying or hostile witness to get his unfavorable statements and know what to meet? He must record and deliver such statements even though he would not vouch for the credibility of the witness by calling him. Perhaps the other side would not want to *518 call him either, but the attorney is open to the charge of suppressing evidence at the trial if he fails to call such a hostile witness even though he never regarded him as reliable or truthful.

Having been supplied the names of the witnesses, petitioner's lawyer gives no reason why he cannot interview them himself. If an employee-witness refuses to tell his story, he, too, may be examined under the Rules. He may be compelled on discovery as fully as on the trial to disclose his version of the facts. But that is his own disclosure--it can be used to impeach him if he contradicts it and such a deposition is not useful to promote an unseemly disagreement between the witness and the counsel in the case.

It is true that the literal language of the Rules would admit of an interpretation that would sustain the district court's order. So the literal language of the Act of Congress which makes 'Any writing or record * * * made as a memorandum or record of any * * * occurrence, or event,' 28 U.S.C.A. s 695, admissible as evidence, would have allowed the railroad company to put its engineer's accident statements in evidence. Cf. Palmer v. Hoffman, 318 U.S. 109, 111, 63 S.Ct. 477, 479, 87 L.Ed. 645, 144 A.L.R. 719. But all such procedural measures have a background of custom and practice which was assumed by those who wrote and should be by those who apply them. We reviewed the background of the Act and the consequences on the trial of negligence cases of allowing railroads and others to put in their statements and thus to shield the crew from cross-examination. We said, 'Such a major change which opens wide the door to avoidance of cross-examination should not be left to implication.' 318 U.S. at page 114, 63 S.Ct. at page 481. We pointed out that there, as here, the 'several hundred years of history behind the Act * * * indicate the nature of the reforms which it was designed to effect.' *519 318 U.S. at page 115, 63 S.Ct. at page 481. We refused to apply it beyond that point. We should follow the same course of reasoning here. Certainly nothing in the tradition or practice of discovery up to the time of these Rules would have suggested that they would authorize such a practice as here proposed.

The question remains as to signed statements or those written by witnesses. Such statements are not evidence for the defendant. Palmer v. Hoffman, 318 U.S. 109, 63 S.Ct. 477. Nor should I think they ordinarily could be evidence for the plaintiff. But such a statement might be useful for impeachment of the witness who signed it, if he is called and if he departs from the statement. There might be circumstances, too, where impossibility or difficulty of access to the witness or his refusal to respond to requests for information or other facts would show that the interests of justice require that such

statements be made available. Production of such statements are governed by Rule 34 and on 'Showing good cause therefor' the court may order their inspection, copying or photographing. No such application has here been made; the demand is made on the basis of right, not on showing of cause.

I agree to the affirmance of the judgment of the Circuit Court of Appeals which reversed the district court.

Mr. Justice FRANKFURTER joins in this opinion.
U.S. 1947.
HICKMAN v. TAYLOR
329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451
END OF DOCUMENT