391 F.3d 135

**Briefs and Other Related Documents**

United States Court of Appeals,
Second Circuit.
Tremain WADE, Petitioner-Appellant,
v.
Victor HERBERT, Superintendent of Attica Correctional Facility, Respondent-Appellee.
Docket No. 03-2905.
Argued: June 18, 2004.
Decided: Dec. 9, 2004.

**Background:** Petitioner sought federal habeas corpus relief after being convicted in state court of second-degree depraved indifference murder and illegal weapons possession. The United States District Court for the Eastern District of New York, Jack B. Weinstein, J., 2003 WL 22956960, denied petition. Petitioner appealed.

**Holding:** The Court of Appeals, Leval, Circuit Judge, held that state appellate court's rejection of Sixth Amendment claim did not warrant federal habeas relief.

Affirmed.

Irenas, District Judge, concurred and filed a separate opinion.

West Headnotes

[1] KeyCite Notes

⚖ 197 Habeas Corpus
  ⚖ 197III Jurisdiction, Proceedings, and Relief
    ⚖ 197III(C) Proceedings
      ⚖ 197III(C)4 Conclusiveness of Prior Determinations
        ⚖ 197k765 State Determinations in Federal Court
          ⚖ 197k770 k. Particular Issues and Problems. Most Cited Cases

State appellate court's summary rejection, as "without merit," of claim that exclusion of alibi witness, due to defendant's failure to give timely notice of alibi defense, did not violate his Sixth Amendment right to present witnesses was determination on the merits, for purposes of federal habeas review, notwithstanding lack of citation to federal case law, and thus was entitled to deference mandated by habeas statute. U.S.C.A. Const.Amend. 6; 28 U.S.C.A. § 2254; McKinney's CPL § 250.20, subd. 1.

[2] KeyCite Notes

⚖ 410 Witnesses
  ⚖ 410I In General
    ⚖ 410k2 Right of Accused to Compulsory Process
      ⚖ 410k2(1) k. In General. Most Cited Cases

Defendant has a right, grounded in the Sixth Amendment's Compulsory Process Clause, to present witnesses in his defense. U.S.C.A. Const.Amend. 6.

[3] KeyCite Notes

⇌110 Criminal Law
  ⇌110XX Trial
    ⇌110XX(A) Preliminary Proceedings
      ⇌110k627.5 Discovery Prior to and Incident to Trial
        ⇌110k627.8 Proceedings to Obtain Disclosure
          ⇌110k627.8(6) k. Failure to Produce Information. Most Cited Cases

Defendant's general right, under Sixth Amendment, to present witnesses in his defense exists only as part of the adversary process, and defense witness testimony may be limited or even excluded as a sanction for the violation of valid discovery rules. U.S.C.A. Const.Amend. 6.

[4] KeyCite Notes

⇌197 Habeas Corpus
  ⇌197III Jurisdiction, Proceedings, and Relief
    ⇌197III(C) Proceedings
      ⇌197III(C)4 Conclusiveness of Prior Determinations
        ⇌197k765 State Determinations in Federal Court
          ⇌197k766 k. Adequacy or Effectiveness of State Proceeding; Full and Fair Litigation. Most Cited Cases

On federal habeas review of decision in which state appellate court rejected petitioner's claim simply by indicating that it was "without merit," habeas court had to assume that state appellate court relied on any reasonable ground available. 28 U.S.C.A. § 2254.

[5] KeyCite Notes

⇌197 Habeas Corpus
  ⇌197II Grounds for Relief; Illegality of Restraint
    ⇌197II(B) Particular Defects and Authority for Detention in General
      ⇌197k480 k. Discovery and Disclosure. Most Cited Cases

State appellate court could reasonably have concluded that petitioner's failure to disclose alibi in timely fashion was willful misconduct or that there was a substantial risk that alibi was fabricated, and that such misconduct caused prosecution irremediable prejudice, and therefore its rejection of petitioner's Sixth Amendment claim challenging exclusion of alibi was not unreasonable application of clearly established Supreme Court precedent and did not support federal habeas relief, given that, in violation of state notice rule, petitioner waited more than one year after his arrest, which was three years after underlying murder, to disclose alibi defense, doing so literally on eve of trial, and offered no competent evidence to support assertion that he did not know of his whereabouts on night of murder until counsel interviewed alibi witness. U.S.C.A. Const.Amend. 6; 28 U.S.C.A. § 2254(d)(1); McKinney's CPL § 250.20, subd. 1.

*136 Kevin F. Casey, The Legal Aid Society, Criminal Appeals Bureau, Brooklyn, N.Y. (Laura Johnson, on the brief), for Petitioner-Appellant.

Michael D. Tarbutton, Assistant District Attorney, District Attorney's Office, Queens County, Kew Gardens, N.Y. (Richard A. Brown, District Attorney, and John M. Castellano, Assistant District Attorney, on the brief), for Respondent-Appellee.

*137 Before: LEVAL and PARKER, Circuit Judges, and IRENAS, District Judge. [FN*]

FN* The Honorable Joseph E. Irenas, United States District Judge for the District of New Jersey, sitting by designation.

Judge IRENAS concurs by separate opinion.

LEVAL, Circuit Judge:
Tremain Wade appeals from the district court's denial of his petition for habeas corpus under 28 U.S.C. § 2254, seeking to set aside his conviction in courts of the State of New York for murder and illegal weapons possession. At his trial, the New York Supreme Court excluded Wade's alibi defense on the ground that his alibi notice was untimely under New York's Criminal Procedure Law Section 250.20. He claimed in his petition that the exclusion of his alibi violated his rights under the Sixth Amendment to the Constitution. The United States District Court for the Eastern District of New York (Weinstein, J.) denied the petition. The district court concluded that the decision of the New York Supreme Court, Appellate Division, upholding the constitutionality of the exclusion of the alibi was not an unreasonable interpretation of Supreme Court authority. We agree and affirm.

### The Trial Evidence Establishing Wade's Guilt

The evidence at Wade's trial established the following: Lawrence Munson was shot and killed in the early morning of October 24, 1993, after an argument outside of a nightclub in Queens, New York. Munson and his friend Rudolph Jones had come to the Q Club at about two a.m. Sometime after five a.m., they exited the club and conversed with two women in a parked BMW. Two other men approached. One of them asked, "[W]hy you trying to talk to my girl?" Munson answered, "[Y]o, I wasn't trying to talk [to her], she was trying to talk to me." The man touched his waistband, prompting Munson to say, "You act like you got a gun, don't act like you got heat." The man then drew a gun and fired, hitting Munson in the chest.

Munson and Jones got into their red Mercury Mercure, and drove off--Munson behind the wheel. When the car hit a bicyclist, Jones realized Munson had been hit, and flagged down a police car. Munson soon died from his wound. At no point during the argument or the brief car ride did Munson tell Jones that he knew his assailant. On November 14, 1993, Jones viewed a photo array and identified the petitioner, Tremain Wade, as the shooter.

That same day, apparently after Jones's photo identification, the police went to petitioner's house to question him about the shooting. Petitioner was not home. To avoid the police, he then fled to Albany. He was not found until almost three years later, on September 24, 1996, at which point he was arrested.

Upon his arrest, petitioner spoke for about twenty minutes with Detective Wendell Stradford of the New York Police Department. Stradford testified that petitioner admitted having known, based on conversations with his father and friends, that the police were looking for him in connection with Munson's killing, and that he therefore went to Albany to avoid arrest. Wade told Stradford he "knew this would come upon him one day." Albany police officers testified that they had stopped petitioner on more than one occasion during the intervening period, and that petitioner had used a false name.

*138 Stradford also testified that petitioner admitted having seen Munson at the Q Club shortly before the shooting. Petitioner said he went to the club with a group of friends,

including his cousin Kim Jackson and a woman named Donna Beckett. He saw Munson there with a "kid" whom he did not know. Petitioner and Munson had known each other for years, and when they saw each other at the Q Club, they hugged and chatted. One of the things they discussed was their rivalry for the same woman. Later, petitioner saw Munson and the unknown "kid" leaving the club and walking toward a red Mercury. Shortly thereafter there was some sort of "ruckus," but petitioner, because he was high, did not investigate. He could not remember when or with whom he had left the club. Stradford's testimony left unclear, however, whether petitioner's statement referred to the night Munson was killed or the last night petitioner had seen Munson alive, or whether those two dates were the same. Stradford asserted his belief that petitioner's statement to the effect that he had seen Munson at the Q Club referred to the night Munson was killed. But Stradford also admitted at one point that petitioner had told him he did not remember the night Munson was killed, and that he did not actually learn of Munson's death until two weeks later, on November 5, 1993.

After his interview with Stradford, petitioner was placed in a lineup and Jones again identified him as the shooter. Jones also identified petitioner in court during his trial. Petitioner's defense centered on the testimony of his friend Donna Beckett. Petitioner, Munson, and Beckett were friends from school and had ridden the bus together for almost ten years. Beckett testified that she had accompanied petitioner to the Q Club in October 1993, but that the occasion predated the night Munson was killed. Although they had seen Munson at the club the night they were there--Beckett had even danced with him--Beckett testified that she went to the Q Club only on Thursday nights. The shooting, by contrast, took place on early Sunday morning. Beckett added that she had seen Munson at a gas station subsequent to their trip to the club.

In his trial defense, petitioner also introduced the surveillance video of the Q Club's front entrance for the night Munson was killed. Viewing the videotape, Jones was unable to identify petitioner or his friends entering the club that night. The club, however, had two other entrances.

### The Alibi Defense

On Friday, November 14, 1997, a few days before petitioner's trial was to begin, his counsel interviewed petitioner's cousin, Kim Jackson. Jackson told petitioner's counsel that she would testify that petitioner could not have been at the Q Club in Queens on October 24, 1993, the night Munson was killed, because he was at an apartment on Long Island.

The next Tuesday, November 18, 1997, over four years after the crime, a year after petitioner's arrest, and the day before the case was to be sent for jury selection, petitioner's defense counsel asked leave of the court to file a late notice of alibi. [FN1] Counsel informed Justice Pearle Appelman that he had first learned of the *139 alibi when Jackson contacted him the previous Friday afternoon. Justice Appelman allowed the notice over the prosecution's objection. The prosecution declined the court's offer of an adjournment to investigate the alibi, but maintained its objection.

FN1. N.Y.Crim. Proc. Law § 250.20[1] provides that defense counsel must serve notice of an alibi defense within eight days of a demand by the prosecution. The court may extend that period "[f]or good cause shown." It is not disputed that the prosecution had made a demand contemporaneous with petitioner's arrest.

The next day, following jury selection, the case was transferred to Justice Robert Hanophy for trial. The prosecution renewed its objection, stating, "This is so long after. So the timeliness is a big thing." Defense counsel reiterated that he had only just discovered the alibi himself, and revealed that until that point he himself had not known where petitioner was on the night of the shooting:

[Defense Counsel]: One of the problems, Judge, well, the defendant was arrested last year, Judge. One of the problems that had incurred [sic] was the fact that he's been continuously incarcerated and had difficulty making contact with people, to get people to

call me. This witness, there have been numerous people that he's attempted to get in contact with me and this is the first time this witness got in touch with me.

\* \* \*

This defendant has only told me, Judge, that he did not do this and he has told me that from the very beginning. This defendant has not told me, I will state it out, this defendant has not told me where he was the night that this person was killed.

\* \* \*

The Court: Let me stop you for a second. You just said now your client has not told you where he was on the night of this murder; is that correct?

[Defense Counsel]: That is correct. Other than the fact he said that he didn't do it.

Justice Hanophy nonetheless concluded, "I see no reasonable excuse for failure to file a timely notice .... [The People] are going to be unduly prejudiced." In response to defense counsel's point that Jackson was willing to speak to the prosecution before trial, Justice Hanophy added:

I find it would be an impossible task for the People to go out and get witnesses to try and counter this last minute notice of alibi .... [T]his is a 1993 crime. He was arrested in '96. There has been almost two years [sic] and there should have been something done. Filing a notice on the day of trial is not timely to me.

Justice Hanophy subsequently issued a written ruling, finding that petitioner had "failed to allege a reasonable excuse to the Court for this most egregious delay in filing notice of this defense" and that "it would be unduly burdensome for the People to now be in a position to try to locate witnesses to refute the defendant['s] untimely alibi defense." Defense counsel cited no constitutional basis for his objection to the exclusion of the testimony.

The trial was conducted without evidence of petitioner's alibi, and the jury convicted petitioner of second degree depraved indifference murder and one weapons count, while finding him not guilty of second degree intentional murder. Petitioner was sentenced to twenty-five years to life imprisonment.

On appeal to the Supreme Court, Appellate Division, petitioner raised three objections to the exclusion of Jackson's testimony. His first objection was based on New York's criminal procedure law. He also objected that, in overruling Justice Appelman, Justice Hanophy had not followed the law of the case. Finally, he raised a federal constitutional objection to the exclusion based on \*140 Taylor v. Illinois, 484 U.S. 400, 108 S.Ct. 646, 98 L.Ed.2d 798 (1988). Petitioner also appealed the length of his sentence on the weapons count. The Appellate Division reduced the sentence on the weapons count, but found that the exclusion of the alibi was not error, and affirmed the murder conviction. The court disposed of the constitutional claim with the summary comment that "[t]he defendant's remaining contentions are without merit." People v. Wade, 277 A.D.2d 475, 716 N.Y.S.2d 897, 897 (App. Div.2d Dep't 2000). Leave to appeal to the Court of Appeals was denied. People v. Wade, 96 N.Y.2d 836, 729 N.Y.S.2d 457, 754 N.E.2d 217 (2001).

Wade's petition for habeas corpus raised a single claim--that exclusion of the alibi violated his Sixth Amendment right to present witnesses under Taylor and related cases. The district court found the case "close," but deferred to the Appellate Division's judgment. On the issue of justification for the delay in giving the alibi notice, the district court concluded that petitioner could not have been unaware of his alibi. The court noted the close relationship between petitioner and the deceased, and petitioner's awareness from an early date that the police considered him a suspect. The court concluded it was "unlikely that he was not aware of where he was on the night of the murder."

### Discussion

We conclude that the Appellate Division's affirmance of petitioner's conviction was not an unreasonable application of the Supreme Court's precedents, and the district court therefore correctly denied the petition. Petitioner's alibi notice was not served until more than a year after the date prescribed by state law, and just before the start of trial. Based on petitioner's three-year pattern of flight and obstructive conduct, the state court could reasonably conclude that petitioner's violation of the notice-of-alibi rule was

willful misconduct, and that the alibi was false. It could also reasonably conclude that the delay was prejudicial to the People's ability to rebut the alibi.

**1. Relevant Supreme Court Authority.**

[1] The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) provides that federal courts may not grant habeas corpus relief to state prisoners with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim ... resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.
28 U.S.C. § 2254(d)(1). The relevant state court decision for our purposes is that of the Appellate Division, which declared that petitioner's federal constitutional claim was "without merit." Such a summary determination, even absent citation of federal case law, is a determination "on the merits" and as such requires the deference specified by § 2254. See Brown v. Artuz, 283 F.3d 492, 498 (2d Cir.2002). The Appellate Division concluded that exclusion of petitioner's alibi was not unconstitutional. Our task is to determine whether the Appellate Division's decision "involved an unreasonable application" of Taylor v. Illinois and other pertinent Supreme Court authority. See Williams v. Taylor, 529 U.S. 362, 409-10, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).

[2] [3] The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have compulsory process for obtaining witnesses in his favor." U.S. Const. amend. VI. In interpreting that text, the Supreme Court has made clear two general propositions. *141 First, a criminal defendant has a right, grounded in the Compulsory Process Clause, to present witnesses in his defense. See Taylor, 484 U.S. at 408-09, 108 S.Ct. 646 (citing, inter alia, Chambers v. Mississippi, 410 U.S. 284, 302, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973), and Washington v. Texas, 388 U.S. 14, 19, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967)). Second, that general right exists only as part of the adversary process, and defense witness testimony may be limited or even excluded as a sanction for the violation of valid discovery rules. As the Court has explained:

The principle that undergirds the defendant's right to present exculpatory evidence is also the source of essential limitations on the right. The adversary process could not function effectively without adherence to rules of procedure that govern the orderly presentation of facts and arguments to provide each party with a fair opportunity to assemble and submit evidence to contradict or explain the opponent's case.

Id. at 410-11, 108 S.Ct. 646.

In Taylor, the Supreme Court applied these general principles to the exclusion of potentially exculpatory testimony of a defense witness. [FN2] The defendant moved, on the second day of trial and after the two principal prosecution witnesses had testified, to add a witness to his list. See id. at 403, 108 S.Ct. 646. Defense counsel informed the court that although the defendant had told him of the witness, he had not previously been able to locate him. It emerged the next day, however, that defense counsel had actually met with the witness the week before trial had begun. The trial court therefore excluded the testimony, and the defendant was convicted. Id. at 404-05, 108 S.Ct. 646.

FN2. In two cases decided prior to Taylor, the Supreme Court directly addressed notice-of-alibi rules, but not in the context of the Compulsory Process Clause. In Williams v. Florida, 399 U.S. 78, 86, 90 S.Ct. 1893, 26 L.Ed.2d 446 (1970), the Court held that Florida's notice-of-alibi rule did not violate the Fifth Amendment's provision against self-incrimination, even though the sanction for noncompliance was exclusion of the testimony. Next, in Wardius v. Oregon, 412 U.S. 470, 472, 93 S.Ct. 2208, 37 L.Ed.2d 82 (1973), the Court struck down Oregon's notice-of-alibi rule under the Due Process Clause because it did not provide for reciprocal disclosure by the state.

In evaluating the defendant's subsequent Sixth Amendment challenge to the exclusion of the testimony, the Supreme Court declined to "draft a comprehensive set of standards to guide the exercise of discretion in every possible case," and stated generally that courts must weigh "the defendant's right to offer the testimony of witnesses in his favor" against the likelihood that improperly offered testimony will subvert "[t]he integrity of the adversary process." Id. at 414-15, 108 S.Ct. 646. The Court observed that discovery rules serve the important interest of "minimiz[ing] the risk that a judgment will be predicated on incomplete, misleading, or even deliberately fabricated testimony." Id. at 411-12, 108 S.Ct. 646. It also noted that it was "reasonable to presume that there is something suspect about a defense witness who is not identified until after the 11th hour has passed." Id. at 414, 108 S.Ct. 646.

The Court rejected three arguments advanced by the defendant. First, it rejected the argument that the defendant should not be punished for the behavior of his counsel. See id. at 418, 108 S.Ct. 646. Second, it rejected the argument that the prosecution's opportunity to voir dire the witness made up for the late notice. "More is at stake than possible prejudice to the prosecution," the Court stated. Id. at 416, 108 S.Ct. 646. Given that the late *142 appearance of the witness was the result of "willful misconduct" by the defense, exclusion could be an appropriate sanction even in the absence of any prejudice. Id. at 417, 108 S.Ct. 646. Third, the Court noted that it was willing to assume that "alternative sanctions [would be] adequate and appropriate in most cases," but rejected the argument that preclusion could not be justified for particularly serious abuses of the adversary process. Id. at 413, 108 S.Ct. 646.

In a more recent case involving a defendant's right to present evidence, the Court reasserted that there is no per se constitutional bar against the exclusion of testimony for failure to comply with discovery rules, specifically the notice provisions of Michigan's rape-shield law. See Michigan v. Lucas, 500 U.S. 145, 153, 111 S.Ct. 1743, 114 L.Ed.2d 205 (1991). The Court stated generally that "[r]estrictions on a criminal defendant's right[ ] ... to present evidence 'may not be arbitrary or disproportionate to the purposes they are designed to serve.' " Id. at 151, 111 S.Ct. 1743 (quoting Rock v. Arkansas, 483 U.S. 44, 56, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987)). But because exclusion could be justified in certain circumstances, the Supreme Court remanded to the state court (which had found a per se bar against exclusion) to reevaluate the exclusion in context. Id. at 153, 111 S.Ct. 1743.

**2. Merits.**

[4] [5] Because the Appellate Division gave no explanation beyond saying that the claim was "without merit," we cannot know the exact basis of its reasoning. If any reasonable ground was available, we must assume the court relied on it. See Brown, 283 F.3d at 498. We believe that, based on the evidence before it, the Appellate Division could reasonably have concluded (i) that petitioner's failure to disclose the alibi in a timely fashion was willful misconduct or that there was a substantial risk that the alibi was fabricated, and (ii) that the misconduct caused the People irremediable prejudice. Although the Sixth Amendment generally requires courts to employ alternative sanctions where possible, it would not have been an unreasonable reading of Taylor to condone exclusion of petitioner's alibi in these circumstances.

a. *The willfulness of the violation and the suspicious nature of the alibi.* New York law required petitioner to disclose his alibi within eight days of the People's timely demand. In violation of that requirement, petitioner waited over a year after his arrest--itself three years after the murder--without doing so. The alibi was not revealed to the prosecution until defense counsel presented it on, literally, the eve of trial. The Appellate Division's task was to determine whether the late revelation was the product of an innocent mistake or of intentional obstruction.

Petitioner contended that his violation of the notice-of-alibi rule was not "willful

misconduct" because he himself did not know where he was on the night of the murder until his counsel interviewed Kim Jackson in November 1997. However, petitioner offered no competent evidence supporting that assertion. It was supported only by defense counsel's statement to the trial court in that "[petitioner] has not told me where he was the night that this person was killed .... [o]ther than the fact he said that he didn't do it."

Especially in the absence of any qualified evidence, the Appellate Division could reasonably have rejected the proffered explanation and concluded either that the alibi was deliberately withheld or that there was a strong likelihood that the alibi was fabricated at the last minute. Petitioner knew he was a suspect within three *143 weeks of the murder, but to avoid police questioning and possible arrest, he fled to Albany and remained there using a false name for three years. In evaluating the state of mind with which petitioner acted after his arrest, it would certainly have been reasonable for the state court to bear in mind his obstructive conduct before his arrest, the improbability under the circumstances that he did not know where he was the night of the murder, and the paucity of evidence supporting his contention. On this basis, the court could reasonably have accepted as true everything in defense counsel's explanation and still have rejected petitioner's unsupported and self-serving excuse for his delay. As noted in *Taylor*, "[o]ne of the purposes of the discovery rule itself is to minimize the risk that fabricated testimony will be believed. Defendants who are willing to fabricate a defense may also be willing to fabricate excuses for failing to comply with a discovery requirement .... A dishonest client can mislead an honest attorney ...." *Id.* at 413-14, 108 S.Ct. 646. [FN3]

FN3. Petitioner objects that it would not have been reasonable for him to have hidden his alibi from his own lawyer. Petitioner argues that if he truly knew of the alibi at the time, there was no "strategic advantage" in concealing it from his counsel. Yet this objection does not necessarily weigh in petitioner's favor. Even if the state court accepted that petitioner's post-arrest silence resulted from his ignorance of any truthful alibi, it might reasonably have concluded that such ignorance in turn resulted from the fact that there *was* no truthful alibi. As the Supreme Court observed in *Taylor*, it is "reasonable to presume that there is something suspect about a defense witness who is not identified until after the 11th hour has passed." *Taylor*, 484 U.S. at 414, 108 S.Ct. 646. What was "suspect" about the alibi in petitioner's case was not merely its timing but also its veracity.

To believe that petitioner passed four years in ignorance of having spent the night of the murder with Jackson in Long Island rather than at the Q Club in Queens, a court would have to accept a series of improbable propositions. The court would have to accept that, when he learned of Munson's murder two weeks after it took place, petitioner could no longer remember where he was on the night his childhood friend was killed at a club he himself had recently patronized. It would have to accept that he failed for the next four years, even after he had been jailed and while he awaited trial for murder, to ask his close friends and family to assist him in reconstructing his whereabouts. Finally, it would have to accept that Jackson, who all the while possessed pressing information that could exonerate her cousin, never revealed it. [FN4]

FN4. In some cases, of course, a court may be obliged to accept otherwise counterintuitive propositions. A defendant may not be able to remember an alibi if he does not become a suspect for some time after the incident, or if he suffers from amnesia; a witness may not come forward if she is unaware of the relevance of her knowledge to a criminal case; a late-arriving story may be plausible because it is corroborated by physical evidence. It would not be appropriate, however, for us to "draft a comprehensive set of standards to guide the exercise of discretion in every possible case." *Taylor*, 484 U.S. at 414, 108 S.Ct. 646. It suffices that petitioner has offered no

evidence to rebut the logical inferences in this case. The Supreme Court's opinion in *Taylor*, which emphasized "the truth-determining function of the trial process," *id.* at 414-15, 108 S.Ct. 646, does not require state courts to suspend all reasonable disbelief.

It would certainly have been reasonable for the Appellate Division to conclude instead that petitioner was engaged in a long continued course of obstruction of justice and that his alibi notice was delivered late either to make its investigation more difficult, or because the alibi was recently fabricated. Such a conclusion would justify the further conclusion that excluding the alibi witness was consistent with *Taylor.*

*144 b. *Prejudice to the prosecution from the late notice.* Petitioner next argues, based on our opinions in *Noble v. Kelly*, 246 F.3d 93 (2d Cir.2001), and *Escalera v. Coombe*, 852 F.2d 45 (2d Cir.1988), that exclusion is generally inappropriate in cases where prejudice to the prosecution can be easily avoided or minimized. Putting aside for the moment the Supreme Court's holding in *Taylor* that the "severest sanction" of exclusion can be warranted for willful misconduct "[r]egardless of whether prejudice to the prosecution could have been avoided," *Taylor*, 484 U.S. at 417, 108 S.Ct. 646, we need not address petitioner's argument in depth because the Appellate Division could reasonably have concluded that the violation irremediably prejudiced the People's ability to rebut the alibi.

Petitioner argues that prejudice was minimal because Jackson was not a "surprise witness." The argument depends on the fact that petitioner mentioned to Detective Stradford in his 1996 statement that Jackson had accompanied him to the Q Club when he last saw Munson. This argument misses the mark. The People might have interviewed Jackson in 1996 once petitioner mentioned her name to Detective Stradford. But, because petitioner did not disclose any alibi, the People had no reason to believe Jackson would be an alibi witness for petitioner. Indeed, because New York's rule requires prompt notice of alibi, and petitioner had given no notice, the People were entitled to assume that Jackson would *not* provide an alibi. See *Williams v. Florida*, 399 U.S. 78, 82, 90 S.Ct. 1893, 26 L.Ed.2d 446 (1970) ("The adversary system of trial ... is not yet a poker game in which players enjoy an absolute right always to conceal their cards until played."). Nor would a pretrial adjournment have done much to counteract the prejudice. By the time petitioner presented his alibi, as Justice Hanophy observed, it would likely have been difficult to find a witness who could remember the events from 1993 and rebut Jackson's story. [FN5]

FN5. In an effort to discount the prejudice attributable to his violation of the notice-of-alibi rule, petitioner argues that his *fourth* year of obstruction was in all likelihood harmless. Any prejudice to the prosecution's ability to locate witnesses who might rebut the alibi
inevitably occurred during the three years he spent avoiding the police, when he was not under a statutory responsibility to reveal his alibi. This is a novel argument, but we do not think the Appellate Division would have been unreasonable to reject it. It is one thing to present one's alibi in a timely fashion after spending three years on the run. We need not address what the Constitution requires of the State in such a case. But it is quite another thing to use one's three years on the run, and the prejudice caused by those three years, as an *excuse* for a further year's delay in violation of discovery rules. Such reasoning turns the Compulsory Process Clause from a protection into an abusive weapon. "[T]he mere invocation of [the right to present witnesses] cannot automatically and invariably outweigh countervailing public interests." *Taylor*, 484 U.S. at 414, 108 S.Ct. 646.

The circumstances in *Noble* and *Escalera* were quite different. The defendant in *Escalera* had noticed an alibi claim which placed him at his home for a brief but crucial period of

time. The defendant himself testified that he was home at the time of the murder, approximately 6:30 p.m., and another witness testified that he dropped the defendant off at his home at 6:00 and picked him up there at 6:40. The defendant then sought to introduce a *third* witness to attest to his presence at home at the same time. The People were thus confronted only with corroboration of a precise alibi defense that had been noticed long before. Because the absence of prejudice was patent, we remanded to the district court to address the willfulness of *145 the defendant's violation. [FN6] See *Escalera,* 852 F.2d at 46; *Escalera v. Coombe,* 826 F.2d 185, 186-87, 191-92 (2d Cir.1987), vacated by 484 U.S. 1054, 108 S.Ct. 1004, 98 L.Ed.2d 971 (1988); *Escalera v. Coombe,* 652 F.Supp. 1316, 1319 (E.D.N.Y.1987), rev'd, 826 F.2d 185, vacated by 484 U.S. 1054, 108 S.Ct. 1004, 98 L.Ed.2d 971 (1988).

FN6. We note as well that *Escalera* was decided prior to the enactment of AEDPA, and thus offers less guidance on how to treat state court denials of federal constitutional claims under § 2254(d)(1) than cases decided after AEPDA.

In *Noble,* we granted the writ because the failure to notice the alibi was a mere matter of semantics. The defendant's theory was that at the time of the murder he was inside the Around the Corner Bar. The People's theory, by contrast, placed the defendant "in front of the Around the Corner Bar." *Noble,* 246 F.3d at 100. Defense counsel plausibly explained that he did not consider his theory an alibi defense because he did not claim to be "at some place or places other than the scene of the crime." *Id.* at 96 (citing N.Y.Crim. Proc. Law § 250.20[1] ). We held that there was no willfulness because the lack of notice resulted from counsel's misunderstanding of state law; further, in circumstances where the witness had long been on the defendant's disclosed witness list, and was, as claimed, present at the crime scene, we also saw no prejudice. See *id.* at 98-101.

Neither *Noble* nor *Escalera* suggests that a state court may not lawfully exclude an alibi witness where the circumstances permit a reasonable conclusion that the alibi was willfully concealed or bore a substantial risk of falsehood, and that the late notice irremediably prejudiced the People.

### Conclusion

We emphasize that, by reason of AEDPA's restrictive standards, the only question we face is whether the state court's determination of constitutionality was objectively unreasonable. We have not considered the very different question of how we would treat the same facts were we required to rule *de novo* on their legal significance. Where the Supreme Court has spoken only in general terms, as it did in *Taylor,* various outcomes may be reasonable applications of the Court's precedents. See *Yarborough v. Alvarado,* 541 U.S. 652, 124 S.Ct. 2140, 2149, 158 L.Ed.2d 938 (2004) ("The more general the rule, the more leeway courts have in reaching outcomes in case by case determinations."). The Appellate Division's determination was not objectively unreasonable.

The judgment of the district court is AFFIRMED.


IRENAS, J., Concurring.

I concur in the judgment and agree that the trial court was justified in excluding the proffered alibi testimony based on the holding in *Taylor v. Illinois,* 484 U.S. 400, 108 S.Ct. 646, 98 L.Ed.2d 798 (1988), which permits the exclusion of alibi testimony, without consideration of the prejudice to the State, when the defendant engages in willful misconduct. I write separately because Judge Leval's excellent opinion may convey the impression that Petitioner's three year flight from justice should be considered in assessing the prejudice to the prosecution caused by his failure to timely file notice of an alibi defense as required by New York law. Therefore, I join all parts of the majority's opinion except that captioned "b. *Prejudice to the prosecution from the*

*late notice."*

Many jurisdictions, including New York State, have statutes or court rules which require a defendant to give early notice of *146 an intention to offer alibi testimony. *See, e.g.,* Fed.R.Crim.P. 12.1. *Taylor* holds that the Compulsory Process Clause bars the exclusion of such testimony as a sanction for late notice to the prosecution if some lesser sanction can serve to eliminate any prejudice to the State caused by the untimely notice. However, *Taylor* also carves out an exception to this general rule: "Regardless of whether prejudice to the prosecution could have been avoided in this particular case, it is plain that the case fits into the category of *willful misconduct* in which the severest sanction is appropriate." 484 U.S. at 417, 108 S.Ct. 646 (emphasis added). *Taylor* thus provides that in some instances of egregious misconduct by the defense the ultimate sanction of exclusion is justified to vindicate certain public concerns such as the "integrity of the adversary process" and the preservation of the "truth-determining function of the trial process," without regard for the State's ability to remedy any prejudice. *Id.* at 414-15, 108 S.Ct. 646.

*Taylor* identifies two types of willful misconduct justifying the exclusion of alibi testimony without consideration of the prejudice to the State. First, "[i]f ... the omission was willful and motivated by a desire to obtain a tactical advantage that would minimize the effectiveness of cross-examination and the ability to adduce rebuttal evidence, it would be entirely consistent with the Compulsory Process Clause simply to exclude the witness' testimony." *Id.* at 415, 108 S.Ct. 646. Second, "[i]f a pattern of discovery violations is explicable only on the assumption that the violations were designed to conceal a plan to present fabricated testimony, it would be entirely appropriate to exclude the tainted evidence regardless of whether other sanctions would also be merited." *Id.* at 414, 108 S.Ct. 646.

I agree that the Appellate Division could have reasonably found that Petitioner engaged in both types of willful misconduct and that excluding Ms. Jackson's tardily proffered alibi testimony was not an "unreasonable application of" *Taylor.* I also agree that evidence of Petitioner's pre-arrest flight may be relevant to determining whether the late notice was given with the intent to either gain a tactical litigation advantage or to proffer fabricated trial testimony. In this context, evidence of flight may be considered analogous to evidence admissible under Fed.R.Evid. 404(b) to prove "motive, opportunity, intent, preparation, plan, knowledge, ... or absence of mistake or accident...."

Here, Petitioner moved to Albany for three years after hearing that he was a suspect in this case and used aliases to avoid the police. He claims not to remember where he was on the night his long-time friend was killed, yet is able to recall in detail the events of an otherwise unremarkable evening he claims was several days prior to the murder. Suddenly, four years later and on the eve of trial, Petitioner's cousin mentions off-hand to defense counsel that Petitioner was in fact nowhere near the scene of the crime. Petitioner's efforts to evade the police combined with a belated and convenient recollection of an alibi suggest a willfulness which would make exclusion an appropriate remedy under *Taylor,* even where prejudice to the state by late notice might otherwise be curable.

However, I cannot join the majority's conclusion that the prosecution would have suffered incurable prejudice from the admission of Ms. Jackson's testimony. Moreover, such a holding is unnecessary to the result we reach here. My concerns lie with how evidence of Petitioner's flight is used to assess the extent of the prejudice to the State caused by the late alibi notice. *147 For purposes of the Compulsory Process Clause, Petitioner's pre-prosecution conduct should not be relevant in determining the quantum of prejudice suffered by the State when it receives late notice of proposed alibi testimony. While the prosecution (and for that matter the defense) may be hampered by Petitioner's three year absence, a defendant's Sixth Amendment rights are not diminished by flight to avoid prosecution. Had Petitioner given timely notice of Ms. Jackson's testimony, the State could not have objected to that evidence on the ground that its ability to develop cross-examination or investigate rebuttal testimony was prejudiced by the passage of time before his arrest. Therefore, I believe that we must

analyze prejudice to the State not from the date of Petitioner's flight, but from the date that the alibi notice should have been given.

Putting aside the evidence of Petitioner's three year flight, my review of the record does not satisfy me that it would be a reasonable application of *Taylor* for the Appellate Division to conclude that there was *incurable* prejudice caused solely by the delay in filing notice of the alibi witness. The argument expressed in footnote five, *supra,* of the majority opinion has an instinctive appeal, but I disagree with its logic. Justice Appelman felt that the prosecution's concerns could be alleviated with an adjournment to provide time for the State to investigate Petitioner's alibi defense. I agree with her assessment that lesser sanctions were appropriate, as the one year post-arrest delay was neither so severe nor irremediable as to justify the extreme sanction of preclusion. Moreover, because the panel is in unanimous agreement as to the existence of willful misconduct, there is no need to reach this issue.

C.A.2 (N.Y.),2004.
Wade v. Herbert
391 F.3d 135

**Briefs and Other Related Documents (Back to top)**

• 03-2905 (Docket) (Nov. 20, 2003)
END OF DOCUMENT

West Reporter Image (PDF)